872 P.2d 661

**In the Matter of a Disbarred Member of the State Bar of Arizona, Michael A. MILLER, Respondent.**

No. SB–94–0018–D.

Comm. Nos. 90–1928, 90–2347 and 90–2383.

Supreme Court of Arizona.

April 12, 1994.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined sua sponte review,

IT IS ORDERED, ADJUDGED AND DECREED that **MICHAEL A. MILLER,** a disbarred member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of twelve months for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A. Such suspension shall run concurrently with his ongoing term of disbarment.

IT IS FURTHER ORDERED that MI-CHAEL A. MILLER shall pay restitution as follows:

Respondent shall pay $1,298.88 to Mission Marketing Corporation no later than July 1, 1994.

Respondent shall pay $200.00 to Advanced Collection Services, Ltd. within ninety (90) days of the date hereof.

IT IS FURTHER ORDERED that Respondent shall comply with all applicable provisions of Rule 63, Rules of the Supreme Court of Arizona, and shall promptly inform this Court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that MI-CHAEL A. MILLER shall be assessed the

costs of these proceedings in the amount of $1,140.99.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION

OF THE

SUPREME COURT OF ARIZONA

Comm. Nos. 90–1928, 90–2347, and 90–2383

In the Matter of

MICHAEL A. MILLER,

a Disbarred Member of the

State Bar of Arizona

RESPONDENT.

## DISCIPLINARY COMMISSION REPORT

[Filed Dec. 17, 1993.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 16, 1993, for oral argument pursuant to Rule 53(d), Ariz.R.S.Ct. The Commission considered the Hearing Committee's recommendation of approval of the agreement for discipline by consent providing for suspension, restitution, binding arbitration, and written compliance.

### Decision

After review of the record on appeal and oral argument, the Commission, with five members concurring and three dissenting,[1] adopts the Committee's recommendation that the agreement for discipline by consent be accepted, and recommends that Respondent (1) be suspended for a period of twelve months, which suspension shall run concurrently with Respondent's ongoing term of disbarment; (2) make restitution in the amount of $1,298.88 to Client A (Matter No. 90–1928) no later than July 1, 1994; (3) make restitution in the amount of $200.00 to Client C (Matter No. 90–2383) within ninety days of the Supreme Court's order of suspension and restitution; (4) submit to binding arbitration through the fee arbitration program of the State Bar, should Client B (Matter No. 90–2347) request such proceedings; (5) pay all costs and expenses incurred by the State Bar in the processing of these matters; and (6) submit written compliance with all of the terms of this recommendation to the State Bar. By the same majority, the Commission also adopts the findings of fact and conclusions of law of the Hearing Committee.

### Facts

Before handling the collection matter which is the subject of Count One (Matter No. 90–1928), Respondent practiced primarily in the area of criminal law. In 1986, Respondent was approached by William Bell, a non-lawyer who professed to have expertise in the collections area ("Bell"). Respondent hired Bell to handle the general office operation of his firm's collections practice.

Respondent's office was subsequently retained by Client A to collect an overdue debt of $6,535.14 from a heating and cooling company. Bell set up the file and pursued initial negotiations with the debtor.[2] The debtor made at least one payment of $1,331.11 to Respondent's firm. However, none of those funds were conveyed to Client A. In fact, Respondent was unaware that his office had received any funds from the debtor. Respondent later discovered that the cases of at least three clients had settled, but that those clients had received no funds. When Respondent confronted Bell about the situation, Bell claimed ignorance. Respondent's attempts to locate the injured clients' files were to no avail.[3] Respondent fired Bell the following day. Respondent's failure to provide adequate supervision over Bell allowed for

---

1. Commissioner Burlison did not participate in these proceedings.

   Commissioner Bossé dissented as he disagreed with the majority of the Commission that a concurrent suspension is an appropriate sanction for a disbarred attorney. Commissioners Doyle and Swick dissented as they do not find that the conduct referenced merits the severity of the sanction recommended.

2. Respondent handled those files where a swift settlement could not be achieved.

3. It is Respondent's belief that the files were destroyed by Bell.

the misappropriation of clients' funds and destruction of client files. Respondent reimbursed the other clients for their losses, but was unable to determine the amount due to Client A.

Respondent also failed to timely respond to the State Bar's inquiries into this matter.

The Committee agreed with the State Bar and Respondent in its finding that this conduct violated ER 1.15, ER 5.3, and ER 8.1.

Count Two (Matter No. 90–2347) addresses whether or not Respondent performed adequate work on Client B's matter to justify the fee charged. Although the State Bar has conditionally admitted it cannot prove these allegations by clear and convincing evidence, Respondent has agreed to submit to binding arbitration, should Client B request it, to settle this issue. Respondent also failed to timely respond to the State Bar's inquiries into this matter.

The Committee agreed that this conduct violated ER 8.1.

In Count Three (Matter No. 90–2383), Respondent retained a collection agency to collect on a debt owed to him. The collection agency was told that quick action was necessary and that it would be paid a contingency fee of 17½%. The collection agency sent a letter to the debtor on July 12, 1990. On July 20, Respondent received from the debtor full payment of the outstanding debt. Respondent was unaware that any work had been performed by the collection agency on this matter and, as a result, he did not pay for its services. Respondent has since agreed to pay the collection agency $200.00 as restitution.

Count Three also alleged failure to timely respond to the State Bar's inquiries into the matter.

The Committee agreed that this conduct violated ER 5.3 and ER 8.1.

### Discussion of Decision

The Commission agrees that Respondent's conduct violated ER 1.15, ER 5.3, and ER 8.1.

The most serious of Respondent's misconduct is that of failing to adequately supervise a non-lawyer assistant. In determining the appropriate sanction, the Commission regularly considers the American Bar Association's *Standards for Imposing Lawyer Sanctions.* However, as noted in the memorandum in support of the agreement for discipline by consent, this issue is not specifically addressed by the Standards. Therefore, the Commission looks to prior decisions of the Court to determine the sanction to be imposed.

In *In re Galbasini,* 163 Ariz. 120, 786 P.2d 971 (1990), the respondent was suspended for six months for, among other things, failing to supervise non-lawyer assistants engaged in debt collection in the respondent's name. That respondent contracted with a company to manage and provide paralegal support for his collections practice. The Supreme Court found that his supervision of the company's agents was "minimal at best," and resulted in injury to several clients. This accurately describes Respondent's conduct, as well.

In *Galbasini,* the Court included an analysis of ER 5.3 offered by G. Hazard, Jr. and W. Hodes in *The Law of Lawyering: The Handbook on the Model Rules of Professional Conduct,* p. 464 (1989). This analysis concedes that an attorney who supervises a non-lawyer assistant is not required to guarantee that that assistant will never engage in conduct that is not compatible with the professional obligations of the lawyer. However, the analysis provides that if a supervising lawyer takes no precautionary steps whatsoever, ER 5.3 is violated, regardless of whether or not the non-lawyer assistants misbehave. 163 Ariz. at 124, 786 P.2d at 975. This analysis is directly on point in the instant matter.

Respondent has admitted that he failed to adequately supervise his collections staff. This lack of supervision resulted in misappropriation of funds and, apparently, destruction of client files. However, since learning of the missing funds which were due to Client A and other clients, Respondent has made every effort to remedy the injury suffered by these clients. Respondent was able to make restitution to two of these three clients. Respondent has been unable, however, to deter-

mine the exact amount of the funds which came into Respondent's office on behalf of Client A. As indicated earlier, Client A's file is missing, presumably destroyed. Further, the debtor has been uncooperative and unwilling to provide information on the amount of the debt it actually paid to Respondent's office; neither Respondent's office, the State Bar, nor Client A's attorney have been able to obtain its cooperation. The restitution of $1,298.88 recommended herein represents the known amount due to Client A of $666.55[4] plus interest at the rate of 10% per annum since 1987.

■ In all three counts, Respondent is charged with failing to timely respond to the State Bar's requests for information. Respondent admits that he failed to give the proper attention to the State Bar's letters in Counts One and Two. By way of explanation, Respondent indicates that, at the time, he was under investigation and indictment on criminal charges. These charges ultimately led to his consent to disbarment in 1991, discussed below.

Regarding his failure to respond to the State Bar's letters concerning Count Three, Respondent states that he never received the initial communications from the State Bar and that he did not intentionally fail to cooperate. Respondent's ex-wife has since admitted to destroying all correspondence received from the State Bar, as she wanted to sever all ties that Respondent held to the practice of law and the State Bar. When Respondent learned of the letters from the Bar, he immediately provided a response.

Standards 9.32 and 9.22 provide factors to be considered in mitigation and aggravation, respectively. In mitigation, Respondent apparently had no selfish or dishonest motive. In aggravation, Respondent failed to timely comply with the State Bar's requests for information and he has substantial experience in the practice of law. Respondent

consented to disbarment in 1991 for criminal conduct involving attempted operation of a prostitution enterprise and money laundering. However, the fact that all of the misconduct at issue occurred prior to Respondent's convictions and disbarment makes it difficult to consider the disbarment as a true prior disciplinary sanction.

■ The majority of the Commission agrees with the Committee that the recommended suspension is appropriate in this matter. The Committee also recommended that this suspension run concurrently with the ongoing term of disbarment. Again, a majority of the Commission concurs. This recommendation is based primarily on the fact that Respondent's disbarment occurred after all of the subject misconduct. As the State Bar and Respondent point out in their joint memorandum in support of the agreement for discipline, had these matters been consolidated with the disbarment matters, no additional sanction would have been imposed. Particularly in light of the fact that all restitution issues are being addressed here as well, the majority of the Commission recommends as follows:

1. The agreement for discipline by consent be accepted;

2. Respondent be suspended for twelve months;

3. Respondent make restitution to Client A in the amount of $1,298.88 no later than July 1, 1994;

4. Respondent make restitution to Client C in the amount of $200.00 within ninety days of the Supreme Court's order of suspension and restitution;[5]

5. Respondent submit to binding arbitration through the State Bar's fee arbitration program, should Client B request such proceedings;

6. Respondent pay all costs and expenses incurred by the State Bar in the disciplinary proceedings against him; and

---

4. Respondent's office had an agreement with Client A for a 50% contingency fee. Thus, of the $1,331.11 that is known to have been collected, Client A would have been entitled to receive one half.

5. This award does not affect any legal rights or remedies which Client C may have against Respondent for further sums claimed to be due and owing.

7. Compliance with all of the terms of this recommendation is to be reported by Respondent, in writing, to bar counsel. If Respondent fails to comply with any of the aforementioned terms, the State Bar may file a notice of non-compliance with the Committee. The Committee will then conduct a hearing at the earliest possible date, but not later than thirty days after receipt of notice, to determine whether non-compliance has occurred and, if so, to recommend any sanction. Non-compliance with the terms of this recommendation shall constitute an independent ethical violation.

RESPECTFULLY SUBMITTED this 16th day of December, 1993.

/s/ Steven L. Bossé
Steven L. Bossé, Chairman
Disciplinary Commission