Craig **SPENCER, et al.,** Plaintiff,

v.

Milton **STEINMAN,** Defendant.

**Civ.A. No. 96–1792.**

United States District Court,
E.D. Pennsylvania.

June 1, 1998.

Jeffrey M. Goldstein, Spector, Gadon and Rosen, P.C., Thomas A. Leonard, Edmond M. George, Charles M. Golden, David C. Shuter, Obermayer, Rebmann, Maxwell & Hippel, L.L.P., Larry R. Wood, Jr., Spector, Gadon and Rosen, Ian M. Comisky, Roger F. Cox, Blank Rome Comisky & McCauley, Philadelphia, PA, for Arden Phoenix Group 1700, L.P., a Pennsylvania Limited Partnership.

Gerard P. Egan, Mark A. Kearney, John M. Elliott, Elliott, Reihner, Siedzikowsky and Egan, P.C., Blue Bell, PA, for Milton Steinman, a Florida Resident Doing Business in Pennsylvania.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

The instant case involves, at bottom, a partnership dispute between Milton Steinman ("Steinman") and Craig A. Spencer ("Spencer"). Steinman alleges that Spencer and his affiliated entities fraudulently induced Steinman to invest in one of Spencer's related entities, and that, once he did so, Spencer, and others affiliated with him, mismanaged and stole money from the partnership and in various forms breached the partnership agreement. Spencer, in turn, contends that Steinman's claims are false and extortionate and that in initially litigating Steinman's claims in state court, one of Steinman's counsel, James Crumlish, Jr., Esquire ("Crumlish"), a partner in the law firm representing Steinman at that time and now, used his influence with Philadelphia Court of Common Pleas Judge Eugene Maier to gain favorable rulings. The dispute, which dates back to 1995, has had a labyrinthian history before several federal district court, bankruptcy court, and state court judges. In its present configuration, the instant action was removed by agreement of the parties from the Court of Common Pleas of Philadelphia County to this Court on September 23, 1997. As of today, the case's most distinguishing characteristic is the level of acrimony displayed by counsel towards each other. The instant discovery motions are the fruit of this poisonous tree.

Before the Court are various motions arising from two incidents involving conduct by Paul R. Rosen, Esquire ("Rosen"), a partner in the law firm of Spector, Gadon, and Rosen (the "Rosen firm"), who represents the Spencer parties in the litigation, and Larry R. Wood, Jr., Esquire ("Wood"), a former associate in the Rosen firm.

In the first incident, according to Steinman, Rosen caused to be issued on behalf of Spencer subpoenas duces tecum to Bell Atlantic, the Philadelphia County Board of Commissioners, and the Philadelphia City Democratic Committee, respectively, without prior notice to Steinman's counsel. These subpoenas sought documents which would allegedly point to improper communications between Judge Maier and partners in Elliott, Rheiner, Sidzikowsky & Egan (the "Elliott firm"), the firm representing Steinman in this case. Assertedly, this information is relevant to Spencer's claim that Crumlish, also a partner in the Elliott firm, improperly influenced the decisions of Judge Maier while the instant matter was before Judge Maier prior to its removal to this Court. Specifically, the subpoena to Bell Atlantic requested

records of any telephone calls between the home or chambers of Judge Maier and the homes of Gerard P. Egan, Esquire, and Mark A. Kearney, Esquire, two of the Elliott firm's partners. The subpoena to the Philadelphia County Board of Commissioners sought documents relating to alleged efforts by Judge Maier, while he was chairperson of the Board of Commissioners, to support Crumlish's election to the Commission. The subpoena to the Philadelphia City Democratic Committee sought the same information as that sought from the Philadelphia County Board of Commissioners.

The second incident relates to communications between Wood and Gerald Lawrence, Esquire ("Lawrence"), a former associate in the Elliott firm, during which, according to Steinman, Wood attempted to obtain confidential information from Lawrence concerning the Elliott firm's representation of Steinman in this case.

Steinman requests that the Court order Rosen and Wood to file affidavits attesting that all documents produced in response to the subpoenas were forwarded to Steinman, that the documents produced be precluded from use during discovery and at trial, that Rosen and the Rosen firm be assessed monetary sanctions for the allegedly improper communications with Lawrence, and that Rosen and the Rosen firm be ordered to pay Steinman's costs for prosecuting the motion.

For the reasons that follow, the Court finds that Rosen, directly, and under principles of agency, violated Rule 45 of the Federal Rules of Civil Procedure when he caused a paralegal under his supervision to issue three subpoenas duces tecum to non-parties in the litigation without prior notice to Steinman's counsel, that Rosen's conduct caused harm to Steinman and to the public, and that, as a result, it is sanctionable. The Court also

concludes that the communications between Wood and Lawrence did not violate the Pennsylvania Rules of Professional Conduct because Wood sought factual information from Lawrence about matters not protected by the attorney-client privilege.

## II. DISCUSSION

### A. *Subpoenas Issued Without Prior Notice to Parties*

Steinman argues that the failure of the Rosen firm to provide notice to his counsel of the issuance of three subpoenas duces tecum violated Rule 45 of the Federal Rules of Civil Procedure. Rosen concedes that prior notice to a party is required in connection with the issuance and service of a subpoena duces tecum directed to a non-party when the deposition of the non-party is not to be taken as part of the document production. Rosen claims, however, that through inadvertence, no notice was given to opposing counsel, and that once the failure to give notice came to his attention, he sent Steinman's lawyers copies of the subpoenas and of all documents received pursuant to the subpoenas. Thus, according to Rosen, no harm was caused to Steinman by his failure to provide notice to opposing counsel.

■ It is settled that a party issuing a subpoena to a nonparty for the production of documents during discovery must provide prior notice to all parties to the litigation. Fed.R.Civ.P. 45(b)(1) ("Prior notice of any commanded production of documents and things ... shall be served on each party in the manner prescribed by Rule 5(b).")[1] *See also,* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2457 (1995) ("The 1991 Amendments to Rule 45 now require that prior notice must

---

1. Rule 5(b) provides:
   Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this

   rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing.
   Fed.R.Civ.P. 5(b).

be served on each party as prescribed by Rule 5(b) if a subpoena commands the production of materials. . . .)" The purpose of the requirement of prior notice:

> is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.. Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discover and in order to pursue access to any information that may or should be produced.

Fed.R.Civ.P. 45 committee note, 1991 amendments. *See Seewald v. IIS Intelligent Information Sys., Ltd.,* Nos. 93–4252, 95–824, 94–3603, 1996 WL 612497, at *4 (E.D.N.Y.1996) (citing *United States v. Santiago–Lugo,* 904 F.Supp. 43, 47 (D.P.R.1995)); *Callanan v. Riggers & Erectors, Inc.,* 149 F.R.D. 519, 520 (D.Vi.1992).[2]

■ At a hearing, Rosen explained that the issuance of the subpoenas resulted from an oversight by the paralegal who worked under his supervision in this case. Rosen testified that he gave Wood instructions to issue the subpoenas and that Wood worked with Christine Hewlett, the paralegal in question, in drafting and issuing the subpoenas in question. After signing the subpoenas, Rosen said "[he] turned them back to either [Ms. Hewlett] or Mr. Wood to serve." Tr. at 54. In turn, Hewlett testified that she was asked by Wood to issue the subpoenas,[3] that she drafted the subpoenas and served

them on the nonparties, that she never previously had been involved in issuing subpoenas in a federal district court civil action, that her professional experience was limited to the bankruptcy area,[4] that she was unaware of the need for prior notice to the parties when issuing a subpoena duces tecum to non-parties in a federal district court civil action, and that she neither showed nor discussed the subpoenas with Rosen prior to service.

■ Hewlett's conduct in issuing subpoenas to non-parties for the production of documents without prior notice to all parties violated Rule 45 of the Federal Rules of Civil Procedure. Because Rosen signed the subpoenas and directed them to be issued, he is directly liable for the violation. Rule 45 provides that "[a]n attorney as officer of the court may issue and sign a subpoena. . . ." The Committee Note to the Rule recognizes that the signature requirement reflects the increased responsibility and liability that attend the power to issue a subpoena on behalf of the court. Fed.R.Civ.P. 45 committee note, 1991 amendments. Thus, by signing the subpoenas and directing their issuance, Rosen assumed liability for misuse of the subpoena power.

Further, Rosen, as Hewlett's supervising attorney, is also vicariously liable for Hewlett's violations of Rule 45 of the Federal Rules of Civil Procedure under principles of agency. First, supervision is the general responsibility of a principal.[5] Rosen, as Hewlett's supervisor, is such a principal. Restatement (Second) of the Law of Agency § 503 cmt. f (1957). Second, prior to di-

---

**2.** Even before the 1991 amendments to Rule 45, which now explicitly requires prior notice, courts had held that prior notice of the issuance of a subpoena duces tecum was required under the Rules. *Seewald,* 1996 WL 612497, at *4 n. 2 (citing *Ann L. v. X Corp.,* 133 F.R.D. 433, 436 (W.D.N.Y.1990); *Richardson v. Florida,* 137 F.R.D. 401, 404 (M.D.Fla.1991)).

**3.** Whether Rosen assigned Hewlett to issue the subpoenas directly or whether this was done by Wood is of no moment since Rosen was the supervisor of both Wood and Hewlett.

**4.** Hewlett apparently believed that issuance of subpoenas duces tecum in a federal district court civil action was analogous to the procedure un-

der Rule 2004 proceedings in the bankruptcy court. Tr. at 17–18, 20–22. A Rule 2004 order may be obtained ex parte in some contexts. *See* Bankr.Rule 2004.

**5.** A supervising attorney also has an ethical obligation to establish appropriate procedures to ensure that those duties he or she delegates to subordinates are performed properly. Pa. Rule of Professional Conduct 5.3(a) and (b). *See, e.g., Office of Disciplinary Counsel v. Ball,* 67 Ohio St.3d 401, 618 N.E.2d 159, 161–62 (1993); *In re Miller,* 178 Ariz. 257, 259, 872 P.2d 661, 663 (1994); *In re Galbasini,* 163 Ariz. 120, 124, 786 P.2d 971, 975 (1990) (citing Hazard & Hodes, *The Law of Lawyering: The Handbook on the Model Rules of Professional Conduct* 464 (1989)).

recting Hewlett (or Wood) to issue the subpoenas, Rosen did not assure himself that Hewlett had adequate training nor did he adequately supervise her once he assigned her the task of issuing subpoenas. Rosen cannot escape liability for this abuse of process by pointing to the inexperience of a subordinate. *See Attorney Grievance Comm'n v. Goldberg,* 292 Md. 650, 441 A.2d 338, 341 (1982) ("An attorney may not escape responsibility ... by blithely saying that any shortcomings are solely the fault of his employees.")

■ By way of mitigation, Rosen argues that once the mistaken issuance of subpoenas came to his attention, he caused Hewlett and Wood to draft letters to Steinman's counsel explaining the error and apologizing for it. Rosen contends that because the documents that were produced by the non-parties were forwarded to Steinman along with letters of apology,[6] no harm was caused to Steinman by the improper use of the subpoena power.

Rosen is mistaken in asserting a "no harm, no foul" defense. The risks attached to the misuse of the subpoena power are great. Under this delegation of public power, an attorney is licensed to access, through a non-party with no interest to object, the most personal and sensitive information about a party. By failing to receive prior notice of the information sought from the non-party, a party is deprived of its greatest safeguard under the Rule, i.e., the ability to object to the release of the information *prior* to its disclosure. Therefore, the loss of the opportunity to object prior to the release of the information caused injury to Steinman regardless of whether the information ultimately was turned over to his counsel.

Moreover, the injury resulting from attorney misuse of the subpoena power is not limited to the harm it inflicts upon the parties. Rather, misuse of the subpoena power also compromises the integrity of the court's processes. *United States v. Santiago–Lugo,* 904 F.Supp. 43, 48 (D.P.R.1995) (recognizing that "[t]he mere fact that an attorney abuses the subpoena power directly implicates the Court itself and causes an embarrassment to the institution"). Under Rule 45, an attorney, as an officer of the court, is delegated the power to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger. *See* Fed.R.Civ.P. 45 committee note, 1991 amendments. With the power to coerce production goes the "increased responsibility and liability for the misuse of the power." *Id.* When the power is misused, public confidence in the integrity of the judicial process is eroded. Therefore, the failure to provide prior notice to Steinman of the subpoenas to non-parties also caused injury to the public.[7]

■ As a sanction, Rosen is admonished against issuing future subpoenas duces tecum to non-parties without prior notice to all parties, and must file an affidavit that all documents produced pursuant to the subpoenas have been furnished to Steinman. Finally, Rosen is directed to pay the counsel fees incurred by Steinman in bringing the violation of Rule 45 to the attention of the Court.

### B. *Communications with Former Counsel*

In the second incident, Wood, while associated with the Rosen firm, is reported to have telephoned Gerald Lawrence, Esquire, ("Lawrence"), who was previously associated with the Elliott firm, and who had recently left the Elliott firm to join a private corporation as counsel, to discuss Lawrence's recollection of a certain incident which allegedly occurred off the record in Judge Maier's courtroom, and also allegedly in the presence of Lawrence. Specifically, Wood asked Lawrence for his recollection as to the circum-

---

**6.** The subpoenas to Bell Atlantic, at least as drafted, did not result in the production of documents evidencing telephone contacts between Judge Maier and the Elliott firm.

**7.** Abuse of the subpoena power is not only a violation of the Federal Rules of Civil Procedure, but potentially exposes offending counsel to discipline under the Pennsylvania Rules of Profes-

sional Conduct as a violation of the rights of third parties. *See* Pa. Rules of Professional Conduct 4.4. Such abuse may also be actionable as a tort. *See* Fed.R.Civ.P. 45 committee note, 1991 amendment; *Santiago–Lugo,* 904 F.Supp. at 48; *Board of Ed. v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975).

stances under which Rosen was summoned to appear before Judge Maier at a discovery hearing on November 21, 1995. Lawrence told Wood on the telephone that he would need some time to decide whether it was appropriate to speak to Wood about the matter at all. Later that day, Wood called Lawrence back, and Lawrence reiterated that he needed additional time to decide whether it was appropriate for him to speak with Wood about the matter. Lawrence never called Wood back and Wood did not attempt to contact Lawrence again.

Steinman complains that Wood's attempt to discuss certain aspects of the Steinman case with Lawrence constituted a violation of the Pennsylvania Rules of Professional Conduct, and therefore, it should be sanctioned.[8] Steinman reasons that Lawrence, as Steinman's former counsel, was, in essence, a former employee or agent of Steinman, and thus Wood's contact with him was improper pursuant to Pennsylvania Rule of Professional Conduct 4.2 ("Rule 4.2").[9] He further claims that during the course of the contact, Wood attempted to elicit from Lawrence allegedly privileged information in violation of Rule 1.6(d) and Rule 1.9.[10] Rosen replies that Wood committed no ethical violation because he sought only factual information concerning an event that Lawrence had witnessed and did not seek any information protected by the attorney-client privilege.

■ In general terms, Rule 4.2 prohibits contacts between a lawyer and a party who is represented by a lawyer concerning the matter in controversy. Pa. Rule of Professional Conduct 4.2 cmt. Even assuming that former counsel could be deemed a "former employee" for purposes of the reach of Rule 4.2,

there is substantial controversy as to whether this "no contact" rule applies at all to contacts with former employees. *See Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899, 902 (E.D.Pa.1991) (collecting cases). In fact, neither the text nor the accompanying commentary to Rule 4.2 expressly refer to "former employees." Moreover, even assuming that Rule 4.2 applies to contacts between counsel and former employees, the courts are in disagreement as to the type and nature of the contacts prohibited by the Rule.

Some courts have agreed that permitting ex parte contacts by opposing counsel with former employees does not impinge upon the attorney-client relationship and, therefore, have concluded that there is no general bar against such contacts. "While Rule 4.2 preserves the posture of the adversarial system and the attorney client relationship it should not necessarily chill the flow of harmful information [about the former employer]." *Action Air,* 769 F.Supp. at 902 (citing *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991)). Other courts have found that the danger posed by permitting opposing counsel to contact ex parte former employees who enjoyed access to particularly sensitive information warrants a per se bar against such communications regardless of the nature of the communications. *See Stabilus v. Haynsworth, Baldwin, Johnson & Greaves,* No. 91–6184, 1992 WL 68563 (E.D.Pa.1992) (quoting Pa. Bar Ass'n Comm. on Legal Ethics and Professional Responsibility. Formal Opinion No. 90–142 (Dec. 7, 1990), " 'If there is a real or perceived risk of disclosure of confidential information protected by the privilege which is or may be damaging to the party in interest, due process considerations may prohibit

---

**8.** The United States District Court for the Eastern District of Pennsylvania has adopted the Pennsylvania Rules of Professional Conduct. Local R.Civ.P. 83.6.

**9.** Rule 4.2 provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
Pa. Rule of Professional Conduct 4.2.

**10.** Rule 1.6 provides in pertinent part:

(d) The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated.
Pa. Rule of Professional Conduct 1.6.
Rule 1.9 provides in pertinent part:
A lawyer who formerly represented a client in a matter shall not thereafter...
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
Pa. Rule of Professional Conduct 1.9.

ex parte contact by adverse counsel with a current or former employee.'"); *Camden v. Maryland,* 910 F.Supp. 1115, 1121 (D.Md. 1996) ("'[W]hat seems certain is that adversary counsel and the former employee himself (particularly given that he may harbor hostility against his former employer) cannot be left to judge.'"); *Zachair, Ltd. v. Driggs,* 965 F.Supp. 741 (D.Md.1997) (following *Camden*).

Yet, at least one court has staked a middle ground, calling for an assessment of the likelihood that the contact in question has actually impaired the policy underlying Rule 4.2, of protecting privileged information from being disclosed to an opponent in litigation. Under this approach:

> That assessment would depend upon weighing such factors as the positions of the former employees in relation to the issues in the suit; whether they were privy to communications between the former employer and its counsel concerning the subject matter of the litigation, or otherwise; the nature of the inquiry by opposing counsel; and how much time had elapsed between the end of the employment relationship and the questioning by opposing counsel. When such factors point to the conclusion that there is a substantial risk of disclosure of privileged matters, as opposed to the risk of the adverse party learning information which might be damaging to the former employer's litigation position, then appropriate notice should be given to the former employees concerning the prohibition against disclosing attorney-client confidences of the former employer and, perhaps, the former employer's counsel should be notified prior to any ex parte interview. Any question concerning the appropriateness of the adversary's decision to proceed with ex parte contact with specific former employees can be resolved by determining whether any information gathered by the opponent actually intrudes upon privileged matters. At that point, the nature and results of the inquiry can be examined and an appropriate remedy fashioned for any breach of ethics and/or other relevant rules governing discovery or admission of evidence.

*Dillon Companies, Inc. v. Sico Co.,* No. 92–1512, 1993 WL 492746, at *5 (E.D.Pa. Nov. 24, 1993).

The Court is persuaded that the *Dillon* factors reflect a sensible and policy-oriented middle ground and, in the absence of a bright-line test adopted by either the Pennsylvania Supreme Court or the Third Circuit, will apply them to inform its judgment in this case.

■ The Court concludes that, even assuming that Rule 4.2 was applicable to former counsel, the Rule did not prohibit Wood's contact with Lawrence because Wood was not seeking disclosure of information by Lawrence which would either bind Steinman or constitute an admission by an agent of Steinman; nor did Wood's inquiry tread upon communications protected by the attorney-client privilege. Rather, Lawrence was asked for his personal recollection of an event he allegedly witnessed. In light of the circumstances, the contacts between Wood and Lawrence did not impinge upon the concerns of Rule 4.2.

Nor are Pennsylvania Rules of Professional Conduct 1.6 or 1.9 implicated in the communications between Wood and Lawrence. Both rules prohibit disclosure of privileged information by a lawyer relating to the representation of a current or former client. Since Steinman was a client of Lawrence and not of Wood, these two rules do not apply to Wood. In any event, even if the proscription of these rules against disclosure of confidential or privileged information by a lawyer was somehow applicable to Wood, it is now conceded that Wood did not ask for, nor did Lawrence disclose, any confidential or privileged information. Therefore, the Court concludes that under these circumstances the contacts between Wood and Lawrence did not violate the Pennsylvania Rules of Professional Conduct.

### C. *Rule 11 Sanctions*

■ Finally, Spencer has moved the Court to impose Rule 11 sanctions on Steinman for his "incessant use of the proceedings before this Court to constantly disparage and demean the Spencers, as well as to unfairly and

unprofessionally accuse and personally attack defense counsel." Spencer's Mem. at 17. Rule 11 "provides that an attorney who fails to either 1) read the pleading; 2) make a reasonable inquiry into the factual and legal legitimacy of the pleading; or 3) file the pleading only for a proper purpose, shall be sanctioned." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir.1994). The Third Circuit has "emphasized that Rule 11 targets abuse, making sanctions appropriate only if 'the filing of the [pleading] constituted abusive litigation or misuse of the court's process.'" *Id.* (quoting *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir.1988)). In light of the Court's discussion of the issues raised by the instant motion, it is clear that the motion, by bringing to the attention of the Court certain asserted violations of the Federal Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct, did not violate Rule 11.

## III. CONCLUSION

The issuance of a subpoena duces tecum to non-parties without prior notice to parties violates Rule 45 of the Federal Rules of Civil Procedure. Rosen is directly, and under principles of agency, liable for the violation of the Rule by a paralegal under his supervision. By issuing the subpoenas duces tecum to non-parties without prior notice to parties, Rosen caused harm to Steinman and to the public. In light of these circumstances, the Court will impose sanctions on Rosen.

Secondly, the communications between Wood and Lawrence did not violate Rules 4.2, 1.6, or 1.9 of the Pennsylvania Rules of Professional Conduct because Wood was not seeking information which was protected by the attorney-client privilege, and, in any event, Lawrence did not disclose any privileged or confidential information to Wood.