**Donald MURPHY, Plaintiff,**

v.

**BOARD OF EDUCATION OF THE ROCHESTER CITY SCHOOL DISTRICT, et al., Defendants.**

**No. 00–CV–6038L.**

United States District Court,
W.D. New York.

Sept. 12, 2000.

*DECISION AND ORDER*

LARIMER, Chief Judge.

The issue before the Court is whether experienced trial counsel for plaintiff should be sanctioned for repeatedly issuing third-party subpoenas without giving notice to opposing counsel as required by Fed.R.Civ.P. 45. In my view, the facts here fully warrant the imposition of compensatory monetary sanctions.

## Procedural Background

Plaintiff, Donald Murphy, filed a 32–page complaint against officers and employees of the Rochester City School District ("School District") and its Board, as well as the union representing the School District's teachers, the Rochester Teachers Association ("Union") and several of its officers. Murphy has raised numerous claims relating to his reassignment in 1991 from a teaching position at a local high school and concerning his present assignment, which is not to his liking. Murphy filed a previous lawsuit in this Court (93–CV–6158L) raising some of the same claims here. That case was settled in 1997, and plaintiff received a substantial sum to cover his attorney's fees. Plaintiff claims in the instant action that the terms of that settlement have been breached, although he has declined to move to vacate the settlement and return the monies paid to him in settlement.

Plaintiff's counsel, Emmelyn Logan–Baldwin, Esq. ("Logan–Baldwin"), who came into this case after the first lawsuit had been settled, also represents other school district employees in similar lawsuits and has sought class action certification as well.

This litigation has been quite contentious and has required this Court, and the magistrate judges of this Court, to resolve many issues relating to the several related lawsuits. In addition, this case was commenced at a time when the School District and the Union were engaged in a conflict over the terms of a new collective bargaining agreement.

The matter now before the Court came to a head when counsel for the School District discovered that plaintiff's counsel had issued

Emmelyn Logan–Baldwin, Rochester, NY, for Donald Murphy, plaintiff.

Greta Katrin Kolcon, Harter, Secrest and Emery LLP, Rochester, NY, Maureen T. Alston, Harter, Secrest and Emery LLP, Rochester, NY, Harry Bernard Bronson, Blitman & King, Rochester, NY, for defendants.

two third-party subpoenas without providing defense counsel with the required notice. Counsel for the School District immediately moved to quash these subpoenas. On May 3, 2000, within days of the motion, the Court held a hearing. Unknown to defendants, plaintiff's counsel had actually issued a total of twelve such subpoenas. That fact was disclosed by plaintiff's counsel at the May 3 hearing but only after the Court questioned her about the matter.

At the May 3 hearing, after hearing all counsel, the Court quashed all of the twelve offending subpoenas and directed plaintiff's counsel to immediately turn over all of the documents that had been provided in response to the subpoenas. The Court also notified plaintiff's counsel, on the record, of its intent to consider sanctioning her for violating Rule 45. Logan–Baldwin was given an opportunity to orally explain her conduct, and the Court provided her with an opportunity to submit written responses and a memorandum of law. After the hearing, Logan–Baldwin filed a 17–page affirmation and a 14–page memorandum of law.

### Discussion

The law could not be clearer concerning an attorney's responsibility when issuing third-party subpoenas. It is also clear and not disputed that plaintiff's counsel issued twelve such subpoenas without giving any prior notice to opposing counsel. Plaintiff's counsel does not dispute the issuance of the subpoenas and does not really dispute that such action violated Rule 45. Plaintiff's counsel's "response" has been an attempt to "explain" the reasons for acting as she did in an effort to dissuade the Court from imposing sanctions.

To understand why sanctions are most appropriate here, it is important to set forth the requirements of Rule 45 and the cases that have interpreted it as well as the actual conduct of plaintiff's counsel.

### Federal Rule of Civil Procedure 45

Pursuant to Rule 45(a)(1)(C), a subpoena may be used to compel the production of documents and may be issued by an "attorney as officer of the court." Fed.R.Civ.P. 45(a)(3). "Prior notice of any commanded production of documents and things ... shall be served on each party in the manner prescribed by Rule 5(b)." Fed.R.Civ.P. 45(b)(1). Upon timely motion, a court shall quash the subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii).

Subdivision (a) was amended in 1991 to allow counsel to issue subpoenas without obtaining them from the clerk of court. The Advisory Committee Notes explain this amendment as "merely a recognition of present reality." Advisory Committee note to 1991 Amendment, subdivision (a). However, "[n]ecessarily accompanying the evolution of this power of the lawyer as officer of the court is the development of increased responsibility and liability for the misuse of this power." *Id.*

Subdivision (b)(1) was also amended to require service of prior notice pursuant to Rule 5. According to the Advisory Committee Notes:

[t]he purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

Advisory Committee note to 1991 Amendment, subdivision (b).

Without question, Rule 45(b)(1) requires a party issuing a subpoena for the production of documents to a non-party to "provide prior notice to all parties to the litigation." *Schweizer v. Mulvehill,* 93 F.Supp.2d 376, 411 (S.D.N.Y.2000); *see Seewald v. IIS Intelligent Information Sys., Ltd.,* 1996 WL 612497, at *4 (E.D.N.Y. Oct.16, 1996). "The requirement of prior notice has been interpreted to require that notice be given prior to the issuance of the subpoena, not prior to its return date." *Id.* (citing *Biocore Med.*

*Technologies, Inc. v. Khosrowshahi,* 181 F.R.D. 660, 667 (D.Kan.1998); 9 Moore's Federal Practice, § 45.03[4][b] at 45–27 (3d Ed.2000)).

### Plaintiff's Counsel's Conduct

Because Rule 45 is so clear and because plaintiff's counsel repeatedly violated it, sanctions would be appropriate based on those facts alone. However, the circumstances surrounding the issuance of these subpoenas underscores the need for sanctions. Therefore, these circumstances are set forth here in some detail.

On April 12, 2000, Logan–Baldwin sent a letter to defense counsel ("April 12 letter") concerning discovery procedures. Logan–Baldwin suggested that the parties reach an understanding with regard to third-party subpoenas, "so each of us can follow the same guidelines." Plaintiff's Affirmation in Opposition to Order to Show Cause ("Aff. in Opp."), Ex. B, at 1. First, she suggested that all subpoenaed non-party materials should be produced to opposing counsel upon request. She went on to note that "[i]t would be my suggestion and my preference that at or about the time of the issuance of the subpoena by counsel for any party that counsel for the other party be provided a courtesy copy of that subpoena and that at or about the time of receipt of any documents responsive to that subpoena, the counsel issuing the subpoena provide copies of any documents received in response to that subpoena to all opposing counsel as a courtesy." *Id.*

Unknown to defense counsel, and contrary to the suggestions contained in her April 12 letter, Logan–Baldwin had already issued *nine* subpoenas, the first of which was served on April 7, 2000.[1] All of these subpoenas sought materials concerning the same defendant, defendant "Smith,"[2] including defendant Smith's personnel records, driving record, and records from various substance abuse treatment facilities. *See* Plaintiff's Affirmation in Response to May 3, 2000 Order, ¶ 2. On the same date as the April letter, Logan–Baldwin issued and served another subpoena seeking records from the Rochester Police Department of an alleged complaint made concerning defendant Smith.[3] *See* Alston May 3, 2000 Affirmation, Ex. B. The following day, April 13, 2000, Logan–Baldwin issued two additional subpoenas, one to Rochester General Hospital seeking defendant Smith's medical records and the other to "Discovery Huether [sic]-Doyle," a treatment facility.[4] *See* Plaintiff's Affirmation in Response to May 3, 2000 Order. Logan–Baldwin caused to be served a total of *twelve* subpoenas.

As Logan–Baldwin was serving the last of her subpoenas, Maureen Alston ("Alston"), attorney for the School District, responded to the April 12 letter. Unaware that a multitude of subpoenas had already issued, Alston indicated that she would be out of the office until April 24, 2000, but that she would respond to Logan–Baldwin's correspondence upon her return. *See* Aff. in Opp., Ex. C.

Meanwhile, material already subpoenaed by Logan–Baldwin began arriving at her of-

---

1. At the hearing, the Court inquired as to when the subpoenas not addressed in the order to show cause were issued:
 COURT: I assume all these other subpoenas were issued on or about the same day the two in the file were issued here, the 12th or the 13th?
 LOGAN–BALDWIN: Some were later, Your Honor.
 May 3, 2000 Transcript, p. 19. In fact, nine of the subpoenas were served *prior* to the dates suggested by the Court: two subpoenas were served on April 7, 2000; three subpoenas were served on April 10, 2000; and four subpoenas were served on April 11, 2000.

2. To protect this defendant's privacy, he or she is referred to in this opinion as "defendant Smith."

For ease of reference, defendant Smith will be referred to in the masculine pronoun form.

3. In response to the Court's May 3 order, Logan–Baldwin provided the Court with a list of all the subpoenas and dates on which they were served. The Rochester Police Department subpoena was apparently inadvertently omitted from this list. A copy of this subpoena, attached to attorney Maureen Alton's May 3, 2000 Affirmation, suggests that the subpoena was issued and served on April 12, 2000.

4. These subpoenas were served on April 14, 2000. *See* Plaintiff's Affirmation in Response to May 3, 2000 Order, ¶ 2.

fice as early as April 15.[5] In a letter dated April 26, 2000, Logan–Baldwin included a reminder to counsel of her April 12 "proposal" concerning discovery. *See* Aff. in Opp., Ex. D. Logan–Baldwin noted that although Magistrate Judge Feldman would provide all parties with materials subpoenaed to his chambers, it was still her position that the parties should agree to her proposal concerning third-party subpoenas. *See id.* Logan–Baldwin made no mention of the outstanding subpoenas nor the information that she had already obtained.

The subpoenaed Rochester General Hospital records were not returned to Logan–Baldwin directly, instead they were returned to Magistrate Judge Jonathan Feldman's chambers. These materials were stamped received by the Clerk of Court on April 21, 2000. Defendants were still unaware that Smith's medical records had been sought and subpoenaed by Logan–Baldwin.

In a letter dated April 27, 2000, Alston responded in part to plaintiff's April 12 letter and directly chided Logan–Baldwin for taking the unilateral action that she suggested should be avoided.

> [I]t is ironic that after promulgating these guidelines, you failed to provide us with courtesy copies of either of the two subpoenas which we know you have already served in this action, to wit: City of Rochester Police Department and Rochester General Hospital. Please forward copies of same together with any documents obtained pursuant to either subpoena immediately. If there are other subpoenas presently outstanding, please forward courtesy copies without delay.

Aff. in Opp., Ex. E. Alston did not know the nature of the records subpoenaed by plaintiff until she received copies of the subpoenaed documents "on or about April 27 or 28, 2000." Alston May 3, 2000 Affirmation, ¶ 15. On April 28, the parties spoke via conference call. According to Logan–Baldwin's account of the conversation, Alston indicated that she was "withdrawing" the previous day's letter, and intended to challenge the relevance of the Rochester General Hospital subpoena. Aff. in Opp., ¶ 19.

On April 30, 2000, Logan–Baldwin referred to the "suggested subpoena guidelines" and indicated that she would "deliver the requested information (including additional copies of what I understand the court has already provided to each of us) to you tomorrow." Aff. in Opp., Ex. H.

On May 1, 2000, still unaware of the ten additional subpoenas, counsel for the School District moved, by order to show cause, to quash the Rochester General Hospital and Rochester Police Department subpoenas.

### Sanctions

■ A court, pursuant to its inherent powers, may sanction conduct considered to be an abuse of the judicial process. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, 111 S.Ct. 2123 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Before a court imposes any type of sanction, "due process requires that court provide notice and opportunity to be heard." *Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol,* 194 F.3d 323, 334 (2d Cir. 1999) (quoting *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir.1997)). Therefore,

> an attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.

*Id.* at 335 (quoting *Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir.1997)); *see also, Mack-*

---

5. In response to the Court's May 3 order, discussed infra, Logan–Baldwin also forwarded all subpoenaed materials to the Court. These materials indicate that Logan–Baldwin began receiving subpoenaed materials as early as April 15, 2000.

*ler Productions, Inc. v. Cohen,* 225 F.3d 136, 143–44 (2d Cir.2000).

At the May 3, 2000 hearing, the Court responded to attorney Alston's request and informed counsel that it was considering sanctions pursuant to Rule 11 and the Court's inherent power.[6] The conduct at issue—the issuance of twelve third-party subpoenas without any notice to opposing counsel—was patently clear to the parties. Logan–Baldwin was given an opportunity to defend her use of the subpoena power in both her written response to defendants' order to show cause and during the May 3, 2000 hearing.

In addition, Logan–Baldwin filed an affirmation and a memorandum of law in response to the School District's application for sanctions. Plaintiff's counsel has had more than ample opportunity to respond to defense counsel's request for sanctions and this Court's notification that it was considering imposing sanctions.

 When imposing sanctions pursuant to its inherent powers, the district court must find that the conduct in question was "without a colorable basis" and undertaken in bad faith, i.e. "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co.,* 194 F.3d at 336. Moreover, a court may exercise its inherent power to assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers,* 501 U.S. at 45–46, 111 S.Ct. 2123 (quotations omitted).

██ Addressing the conduct at issue, the Court's first inquiry is whether Logan–Baldwin had a colorable basis to issue a dozen third-party subpoenas without providing any notice to opposing counsel. Thus, the Court must consider whether Logan–Baldwin's actions had "some legal and factual support, considered in light of the reasonable beliefs of the individual." *Revson v. Cinque & Cinque,* 221 F.3d 71, 79 (2d Cir.2000) (quoting *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980)).

There is no colorable basis, either legally or factually, to support plaintiff's counsel's issuance of these subpoenas without giving prior notice to opposing counsel. As discussed above, Rule 45 could not be clearer. Logan–Baldwin contended at the hearing and in her papers that these subpoenas were issued according to a process followed by Magistrate Judge Hugh Scott in an unrelated case pending in another city in this district, *Sidari v. Orleans County,* 95–CV–7250 ("*Sidari.*"). The Court has reviewed the file in the *Sidari* case, and it is clear that plaintiff's reliance on that case is totally misplaced. In *Sidari,* Logan–Baldwin objected to her opponents issuing third-party subpoenas without giving her prior notice. *See Sidari,* Dkt. # 254, ¶¶ 2, 5, 12. How ironic that Logan–Baldwin complained there of the very conduct that she has undertaken here. The events in *Sidari* do not help plaintiff's counsel at all since they demonstrate that she was aware that prior notice should be given before subpoenas were issued.

Furthermore, any suggestion that the Magistrate Judge's ruling in *Sidari* gave her authority to ignore Rule 45 is a gross misstatement of what actually happened in *Sidari.* Magistrate Judge Scott found that the parties should receive notice of third-party subpoenas, and found that "any subpoena to non-parties just as to parties should be made on notice to the parties in this case. Any information previously obtained from a non-party witness must be disclosed to all parties."[7] August 13, 1999 Transcript, Dkt. # 267, p. 15. Magistrate Judge Scott went on to hold that the information obtained by the defendants was relevant and discoverable. Thus, he elected not to quash the subpoenas in that instance.

Magistrate Judge Scott plainly did not hold that the Federal Rules permit the issuance of third-party subpoenas without giving notice to opposing counsel. It is disingenuous for Logan–Baldwin to suggest otherwise. Stated simply, Logan–Baldwin's position ap-

---

6. Rule 11 is not the appropriate vehicle to address Logan–Baldwin's conduct. As such, this Decision and Order will focus on the appropriateness of sanctions pursuant to the Court's inherent power.

7. Magistrate Judge Scott inferred the notice requirement from Fed.R.Civ.P. 30. However, contrary to Logan–Baldwin's assertion, he did not rule that third-party subpoenas may be issued without notice.

pears to be that since opposing counsel's subpoenas in *Sidari* were not quashed, she may issue third-party subpoenas with impunity, regardless of the mandates of Rule 45. There is a vast difference between a reasonable misapprehension of the permissibility of conduct under the Rules and a misapprehension of the degree of *consequence* which may flow from such conduct.

The requirements of Rule 45 are clear. Moreover, as Logan–Baldwin's argument in the *Sidari* case demonstrates, she was well aware that third-party subpoenas require notice to opposing counsel. The fact that Magistrate Judge Scott, when presented with facts considerably less egregious than those at issue here, chose not to quash the offending subpoenas does not persuade the Court that Logan–Baldwin reasonably believed that her conduct was proper. Logan–Baldwin was aware of Rule 45 and chose to ignore it. The Court, therefore, finds that Logan–Baldwin's issuance of twelve subpoenas without notice to opposing counsel was without a colorable basis.

When a court exercises its inherent power to sanction, it must also make a finding of bad faith, as "shown by (1) 'clear evidence' or (2) 'harassment or delay or . . . other improper purposes.'" *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir.1998) (citing *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991)). Logan–Baldwin's actions here constitute clear evidence of bad faith, and were taken for the improper purpose of obtaining and reviewing the documents in question before opposing counsel had the opportunity to object.

The most troubling aspect of Logan–Baldwin's conduct is her April 12 letter "suggesting" that the parties notify each other when serving third-party subpoenas. This letter was sent five days *after* she began issuing the very type of subpoena for which she proposed the parties give notice. It is impossible to reconcile that letter with her directly contradictory actions; it is hard to characterize this letter as anything other than deceitful. The April 12 letter suggests an intent to lull opposing counsel while she issued subpoenas for sensitive records in the custody of third-parties.[8]

At the hearing, Logan–Baldwin attempted to justify her duplicitous letter by arguing that it was a "timely request . . . and would be the required notice, even under the process Ms. Alston agreed to and the process that I suggested." May 3, 2000 Transcript, p. 11. At the time, a suggestion that the letter actually constituted some form of notice as required by Rule 45 seemed farfetched. Now that the Court has learned of the existence of the additional ten subpoenas, the first of which was served some five days prior to the issuance of the letter, this explanation is incredible.[9]

Moreover, although Logan–Baldwin began receiving subpoenaed information as early as April 15, 2000, she did not take any steps to share this information with opposing counsel, or to notify them of its receipt. In fact, in her correspondence dated April 26, 2000, Logan–Baldwin merely "reminded" opposing counsel of her proposal without providing even a hint that she had already issued subpoenas and obtained documents.

Even after opposing counsel discovered that two subpoenas had been issued and inquired about the existence of other subpoenas, Logan–Baldwin maintained her silence.

8. Ironically, in the *Sidari* case Logan–Baldwin complained of exactly the same tactic: "It is apparent from a review of the dates of the subpoenas and the dates of the letters when the subpoenas were forwarded to me, that Orleans County attorneys are systematically withholding information about the service of the subpoenas in an effort to undermine or eliminate my opportunity to move against the subpoenas." *Sidari*, Dkt. # 254, ¶ 12.

9. Logan–Baldwin argues that she was acting quickly to meet discovery deadlines and the entire tone of her response suggests that defen-

dants, because they did not immediately agree to her proposal, are somehow to blame for her issuance of the improper subpoenas. Such an argument is ridiculous and points out the unrepentant attitude of plaintiff's counsel. Defendants had every right to expect that the Federal Rules of Civil Procedure would be followed. Moreover, it is difficult to see how Logan–Baldwin's ability to comply with impending discovery deadlines would be impaired by giving opposing counsel the required notice of third-party subpoenas.

Alston's letter of April 27, 2000, requested "courtesy" copies of any other subpoenas. Despite this request, Logan–Baldwin did not reveal the existence of these subpoenas until the May 3 hearing, and then only in response to a direct inquiry from the Court.

Finally, many of Logan–Baldwin's explanations for her conduct offered at the May 3 hearing strained credulity. For example, the Court questioned Logan–Baldwin as to whether she thought that defendant Smith would have consented to the release of his medical records:

> COURT: Did it ever occur to you to say, "I need a medical release of [defendant Smith]" Were you afraid it might be objected to?
>
> LOGAN–BALDWIN: No, Your Honor.
>
> COURT: You weren't afraid of that?
>
> LOGAN–BALDWIN: I'm sure we have disputes here, but that is a matter that can be handled once we have communicated our request. In fact, I think there are disputes about documents here that we communicated requests on which have to be resolved.
>
> COURT: The biggest dispute is whether you should have gotten them in the first place, and that seems to me the precise reason why Rule 45 exists.

May 3, 2000 Transcript, p. 12–13.

Logan–Baldwin's suggestion that she may secretly subpoena personal medical records then argue about the relevance of these documents later demonstrates a distressingly unrepentant posture. Her subpoena-first, ask-questions-later approach is clearly contrary to Rule 45 and infringes on an individual's right to control access to his or her personal medical information.

What subsequently happened in this case demonstrates the harm in Logan–Baldwin's approach. After this Court quashed the subpoenas at the May 3 hearing, plaintiff later reissued them, upon proper notice to opposing counsel. Defendants again moved to quash the subpoenas and in an order dated September 11, 2000, Magistrate Judge Feldman quashed all of the subpoenas. His determination that this information is not relevant to this litigation demonstrates why advanced notice to opposing counsel is crucial before third-parties are required to disclose highly sensitive material. As Judge Feldman noted: "This Court firmly rejects as deplorable the notion that a litigant can delve without restriction or restraint into the most private and personal aspects of an individual's life simply by designating the individual as a 'defendant' in a discrimination lawsuit." September 11, 2000 Decision and Order, at p. 7.

Logan–Baldwin, through her correspondence to counsel, suggested that she would properly notify counsel of any third-party subpoenas. However, in direct contravention of that seemingly collegial proposal, Logan–Baldwin proceeded to subvert the very process that she suggested by covertly issuing a total of twelve subpoenas. Her actions allowed her to view improperly subpoenaed information before opposing counsel had the opportunity to object to its disclosure. It is the opinion of this Court that Logan–Baldwin acted in bad faith and with an improper purpose.

"[W]hen an attorney misuses his or her power under Rule 45 to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded." *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 380 (D.Md.1999). Moreover, as contrasted with a plaintiff who may place his or her medical condition at issue by virtue of a claim of physical or mental injury, here plaintiff sought the medical records of a *defendant* to the lawsuit. *See Mann v. University of Cincinnati,* 152 F.R.D. 119 (S.D.Ohio 1993), aff'd. by unpublished opinion, 114 F.3d 1188, 1997 WL 280188 (6th Cir.1997) (defendant's use of third-party subpoena to obtain plaintiff's full medical record found improper and sanctionable). Defendant Smith had not raised the existence of any medical condition as a defense to this action, nor had the relevance of his medical records been determined by the Court prior to issuance of the subpoena.

Logan–Baldwin, without seeking any judicial opinion, determined that she wanted de-

fendant Smith's medical and other personal records and proceeded, without notice to defendant Smith or his counsel, to surreptitiously obtain this information. In an age where vast amounts of personal information is retained by outside sources, the abuse of Rule 45 subpoena power demonstrated here raises serious public policy implications. Here, Logan–Baldwin obtained, "through a non-party with no interest to object, the most personal and sensitive information about a party." *Spencer v. Steinman,* 179 F.R.D. 484, 489 (E.D.Pa.1998) (rejecting attorney's " 'no harm no foul' defense" and assessing attorneys' fees as sanction following abuse of Rule 45 subpoena power). Taken to its logical extreme, any individual named as a defendant could become subject to the unfettered disclosure of his or her personal information—while the judiciary is relegated to the role of forcing closed Pandora's box. Logan–Baldwin, through her actions, deprived defendant Smith of his "greatest safeguard under the Rule, i.e., the ability to object to the release of the information prior to its disclosure." *Spencer,* 179 F.R.D. at 489.

### CONCLUSION

For the foregoing reasons, this Court finds that Logan–Baldwin's decision to issue the third-party subpoenas discussed herein without notice to opposing counsel was without any colorable basis and was undertaken in bad faith. Having so found, it is the decision of this Court that Logan–Baldwin should pay as a compensatory sanction the attorneys' fees and costs incurred by the School District defendants as a result of her conduct. Defense counsel submitted an affirmation detailing these costs. *See* Alston May 12, 2000 Affirmation. Logan–Baldwin has offered no specific objection to the time spent or nature of the legal work.[10]

Therefore, it is the decision of this Court that attorney Emmelyn Logan–Baldwin is

hereby sanctioned and ordered to pay the law firm of Harter, Secrest & Emery the sum of $5,620 as a compensatory sanction, which constitutes attorneys' fees and costs incurred by the School District's counsel as a consequence of, and in relation to, plaintiff's counsel's improper conduct. Such sums are due within thirty (30) days of entry of this Decision and Order. The School District's other requested relief is denied.

IT IS SO ORDERED.

---

10. Logan–Baldwin suggested that by bringing this matter before this Court as opposed to the Magistrate Judge, defendants have needlessly generated additional attorneys' fees. This argument is wholly without merit. This Court has the ultimate responsibility for this case, not the Magistrate Judge. Furthermore, it is total speculation to suggest that fees would have been different before another judge.

Logan–Baldwin also argued that the extent of defendants' fees were impacted by their choice to forgo an amicable solution and seek judicial intervention. Given Logan–Baldwin's conduct, defendants were completely justified in seeking the Court's assistance. Moreover, it was only through the Court's intervention that defendants discovered the existence of the other ten subpoenas.