537 S.E.2d 632

Bonnie L. KEPLINGER, Plaintiff,

v.

VIRGINIA ELECTRIC AND POWER
COMPANY and Judith A.
Parsons, Defendants.

No. 27381.

Supreme Court of Appeals of
West Virginia.

Submitted June 7, 2000.

Decided July 14, 2000.

David M. Hammer, Robert J. Schiavoni, Hammer, Ferretti & Schiavoni, Martinsburg, West Virginia, Attorneys for the Plaintiff.

Stephen M. LaCagnin, Alvin L. Emch, Julia M. Chico, Jackson & Kelly PLLC, Morgantown, West Virginia, Attorneys for the Defendants.

Harry G. Shaffer, III, Charleston, West Virginia, Attorney for Amicus Curiae, Defense Trial Counsel of West Virginia.

Jane E. Peak, Morgantown, West Virginia, Attorney for Amicus Curiae, West Virginia Employment Lawyers Association.

DAVIS, Justice:

The Circuit Court of Grant County presents this Court with a certified question involving various issues related to the discovery of the medical records of a party to a law suit from a nonparty source. We reformulate the question to enable us to address the numerous issues raised, and we conclude: (1) the provisions of W. Va.Code §§ 57–5–4a—4j must be followed any time a subpoena duces tecum is issued to require production of hospital records; (2) when Rule 45 of the West Virginia Rules of Civil Procedure is used as a

discovery device, it is subject to all the provisions of the discovery rules; (3) when a party seeks to use Rule 45 to subpoena an opposing party's medical records from a nonparty, notice to the party/patient must occur sufficiently in advance of service of the subpoena to provide a reasonable opportunity for the patient/party to object; and (4) a party may not use Rule 45, or any other discovery device, to pursue discovery of items that are the subject of an ongoing discovery dispute.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On June 4, 1999, Plaintiff Bonnie L. Keplinger (hereinafter "Ms. Keplinger"), filed a civil action against Defendants Virginia Electric and Power Company and Judith A. Parsons (hereinafter collectively referred to as "VEP"). In her law suit, Ms. Keplinger claimed that she had been subjected to employment discrimination when her employment was terminated without affording her reasonable accommodation for her handicap, which handicap, according to Ms. Keplinger, had resulted from a work related ankle injury. She further claimed that her privacy had been invaded by a statement in a company newsletter reporting that she had been removed from the payroll due to her "medical disqualification."[1]

During the discovery process in this case, VEP sought full discovery of Ms. Keplinger's entire medical and mental health history.[2] VEP's initial discovery request was served on Ms. Keplinger on August 7, 1998. Ms. Keplinger responded by objecting that VEP's requests were overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Instead, Ms. Keplinger offered to provide information and medical records relating solely to her workplace ankle injury, or, in the alternative, she proposed that she obtain her medical records, screen them, produce only those portions she deemed relevant, and submit a privilege log for those records not produced. Finally, as a third option, Ms. Keplinger offered to discuss the production of all medical records that were generated during a reasonable time frame to be mutually established by the parties. Notwithstanding these suggested resolutions, the parties were unable to settle this discovery dispute between themselves. Consequently, VEP filed a motion to compel in November, 1998. A hearing on the motion was initially scheduled for November 16, but was ultimately continued to a later date.[3]

According to Ms. Keplinger, a subsequent hearing on this matter was ultimately scheduled for February 19, 1999. In mid-January, 1999, however, VEP served subpoenas duces tecum, in accordance with Rules 34 and 45 of the West Virginia Rules of Civil Procedure, on twelve of Ms. Keplinger's health care providers who had been identified from her workers' compensation and employment records. The subpoenas were issued and copies were served upon Ms. Keplinger on January 15, 1999. The subpoenas were served on the various health care providers on several dates between January 15, 1999, and February 5, 1999. The subpoenas did not require the health care providers' physical attendance, rather they commanded only that responsive documents be produced for inspec-

1. Ms. Keplinger explains that her disability resulting from her ankle injury was the asserted basis for VEP's determination that she was medically disqualified from the position for which she had been employed.

2. VEP claims Ms. Keplinger's medical condition and history are at issue because the essence of her case is the allegation that VEP failed to accommodate her physical disability. Furthermore, VEP asserts that Ms. Keplinger's medical history is discoverable because she seeks to recover medical expenses and other compensatory damages that, under the West Virginia Human Rights Act, might include damages for emotional distress. Finally, because Ms. Keplinger also

seeks damages for her job search expenses, VEP contends that her medical records are relevant to the question of whether she should or could have mitigated her damages by obtaining gainful employment.

3. The initial hearing was to be held before the Honorable Kelley Kuhn, sitting as interim judge. An order entered by Judge Kuhn following the November 16 hearing states that "the Court refrained from hearing argument or ruling on Defendant's Motion to Compel pending complete review of the motion and responsive briefs." A subsequent order, entered November 17, 1998, further continued the matter.

**14**

tion and copying by VEP. Thereafter, VEP received medical documents from eight of the health care providers subpoenaed. The records were received between January 19, 1999 and February 8, 1999.[4]

On January 27, 1999, Ms. Keplinger served motions to quash eleven of the subpoenas. However, she failed to notice a hearing on those motions. VEP then served its response to the motion to quash on February 16, 1999, and also served a notice setting the matter for hearing on February 19, 1999, during a previously scheduled status conference. Also on February 16, VEP filed *in an open court file*, all of Ms. Keplinger's medical records that it had obtained by subpoena, including her mental health records.[5] During the February 19 hearing, the circuit court heard the parties' arguments on Ms. Keplinger's motion to quash the subpoenas, on the defendant's earlier motion to compel, and on cross motions for protective orders. The circuit court then ruled that Ms. Keplinger was to respond to outstanding discovery requests regarding her medical history only for the time period of April 9, 1991, to the present with a continuing obligation to supplement, that VEP was entitled to obtain medical records directly from Ms. Keplinger's health care providers without prior screening by Ms. Keplinger's counsel, and that Ms. Keplinger was to execute and provide VEP with a release authorizing the procurement of all medical records for the defined period.[6] The circuit

court further ordered that copies of all medical records obtained by VEP be provided to Ms. Keplinger pursuant to a protective order. In addition, the court granted Ms. Keplinger's motion to quash the subpoenas, but stated that its order directing her to execute releases of her medical records resolved the issues that had been raised in her motion. Finally, the circuit court ordered that VEP obtain all future records via the releases and not via subpoenas.

VEP contends that it only received ten pages of medical records that were outside the time frame established by the circuit court. Furthermore, VEP asserts that these records were received on or about January 19, 1999, which date preceded service of Ms. Keplinger's motion to quash.[7]

Subsequently, in April 1999, Ms. Keplinger filed a motion for leave to file an amended complaint. The amended complaint added a cause of action for tortious interference with a fiduciary relationship. The new cause of action was based upon W. Va.Code §§ 57–5–4a—4j. VEP opposed the motion. Following a hearing, the circuit court granted Ms. Keplinger's motion and concluded:

a. The Medical Records Act, West Virginia Code § 57–5–4a, *et seq.*, provides the exclusive procedures that must be followed in all instances to obtain the release of medical records;

b. The Medical Records Act, West Virginia Code § 57–5–4a, *et seq.*, does not deal

4. One of the records was submitted by the health care provider in a sealed envelope with a notation that it should not be opened without Ms. Keplinger's approval or judicial determination. Nevertheless, VEP broke the seal and examined the enclosed documents. The parties dispute whether the documents were submitted by a hospital, which would place them within the scope of W. Va.Code §§ 57–5–4a—4j.

5. According to VEP, the court clerk subsequently sealed the file. VEP asserts that the clerk assured it that no one had reviewed the records before they were properly sealed.

6. Ms. Keplinger avers that, notwithstanding the court's time limitation on the discovery of her medical records, VEP submitted the releases to the relevant health care providers with a cover letter stating "[t]his is to request copies of *any and all records, both in-patient and out-patient*

records, which you maintain concerning this patient's medical history...." Ms. Keplinger argues that, because of this statement in the cover letter, her health care providers did not realize that her release was limited in time and they provided all of her medical records, including irrelevant and highly personal medical records. She further contends that, instead of notifying her of the improper disclosure and returning the records, VEP filed all of her medical records in an open court file, which was accessible to anyone, without placing them under seal. This action by VEP, Ms. Keplinger asserts, violated an "AGREED PROTECTIVE ORDER" prepared by the parties and entered by the circuit court on April 16, 1999.

7. It is noteworthy, however, that even after receiving service of Ms. Keplinger's motion to quash, VEP continued to serve subpoenas on some of Ms. Keplinger's health care providers.

primarily with the admissibility of medical records as Defendants contended because said statute sets forth specific procedures for the release of medical records;

c *Morris v. Consolidation Coal,* [191 W.Va. 426,] 446 S.E.2d 648 (W.Va.1994), *Kitzmiller v. Henning,* [190 W.Va. 142,] 437 S.E.2d 452 (W.Va.1993) and West Virginia Code § 57-5-4a *et seq.,* protect the privacy of medical records such as those obtained by Defendant Virginia Electric and Power Co., pursuant to subpoena;

d. The Medical Records Act was violated when Defendants' counsel received medical records subpoenaed pursuant to Rule 45 of the West Virginia Rules of Civil Procedure; and

e. Thereafter, by Order entered on April 1[6], 1999, the Court ordered that all outstanding subpoenas issued by Defendants' counsel pursuant to Rule 45 be quashed and directed that Plaintiff execute a release of medical records for use by Defendants in obtaining the records from Plaintiff's health care providers not obtained *via* subpoena.

The Court hereby CONCLUDES that Plaintiff has raised separate causes of action for invasion of privacy and for tortious interference with a fiduciary relationship and the granting of the motion to amend the complaint will cause no prejudice to Defendants for trial purposes.

As a result of these rulings, VEP filed a motion to certify questions to this Court. Consequently, the circuit court certified the following question:

In any suit alleging wrongful termination because of physical disability, does the Defendants' attorney create an additional cause of action for tortious interference with Plaintiff's physician-patient relationship by serving a subpoena duces tecum on Plaintiff's health care providers demanding that they provide copies of all of Plaintiff's medical records directly to Defendants' attorney; rather than delivering the records to the Clerk of the Circuit Court in a sealed envelope to await a judicial determination as specified in the Medical Records Act, W. Va.Code 57-5-4a, et seq.?

The circuit court answered "Yes" to this question.

## II.

### CERTIFIED QUESTION

■ Before addressing the issues raised in the instant proceeding, we first reformulate the question certified to us by the circuit court. In this regard, we have previously explained that:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code,* 51-1A-1, *et seq.* and *W. Va.Code,* 58-5-2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

Syl. pt. 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993). *See also* W. Va. Code § 51-1A-4 (1996) (Supp.1999) ("The supreme court of appeals of West Virginia may reformulate a question certified to it."). *See, e.g., Potesta v. United States Fidelity & Guar. Co.,* 202 W.Va. 308, 313 n. 9, 504 S.E.2d 135, 140 n. 9 (1998). In order to fully address the legal issues involved in the instant question, we reformulate it into the following five questions:

(1) In any civil action, may a party create a cause of action for tortious interference with an opposing party's physician/patient relationship, under syllabus point 5 of *Morris v. Consolidation Coal Co.,* 191 W.Va. 426, 446 S.E.2d 648 (1994), based upon a violation of the provisions of W. Va.Code §§ 57-5-4a—4j, when the violation allegedly occurred by virtue of the party's action in subpoenaing medical professionals pursuant to Rules 34 and 45 of the West Virginia Rules of Civil Procedure for the sole purpose of inspecting and copying the opposing party's medical records rather than subpoenaing such records in connection with a hearing, deposition or trial?

(2) When using Rule 45 of the West Virginia Rules of Civil Procedure as authorized by W. Va. R. Civ. P. 34, is Rule 45

subject to the provisions of the civil procedure discovery rules?

(3) When utilizing Rule 45 to subpoena a party's medical records from a nonparty, does the party receive adequate notice of a subpoena duces tecum when such notice is served on the party the same day the subpoena duces tecum is served on the nonparty record holder?

(4) May a party utilize Rule 45 of the West Virginia Rules of Civil Procedure to subpoena records that are the subject of an ongoing discovery dispute that has not been resolved by the parties or decided by the trial court?

(5) In any civil action, may a party create a cause of action for tortious interference with an opposing party's physician/patient relationship, under syllabus point 5 of *Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 446 S.E.2d 648 (1994), based upon the party's conduct in attempting to obtain the medical records of an opposing party by subpoena pursuant to Rules 34 and 45 of the West Virginia Rules of Civil Procedure?

## III.

## STANDARD OF REVIEW

■ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). *Accord Potesta v. United States Fidelity & Guar. Co.*, 202 W.Va. 308, 314, 504 S.E.2d 135, 141 (1998); *Griffis v. Griffis*, 202 W.Va. 203, 208, 503 S.E.2d 516, 521 (1998); Syl. pt. 1, *Williamson v. Greene*, 200 W.Va. 421, 490 S.E.2d 23 (1997).

## IV.

## DISCUSSION

Having reformulated the question certified to us by the circuit court, and having stated the proper standard for our review, we proceed to address each of the reformulated certified questions in turn.

*A. In any civil action, may a party create a cause of action for tortious interference with an opposing party's physician/patient relationship, under syllabus point 5 of Morris v. Consolidation Coal Co., 191 W.Va. 426, 446 S.E.2d 648 (1994), based upon a violation of the provisions of W. Va.Code §§ 57–5–4a— 4j, when the violation allegedly occurred by virtue of the party's action in subpoenaing medical professionals pursuant to Rules 34 and 45 of the West Virginia Rules of Civil Procedure for the sole purpose of inspecting and copying the opposing party's medical records rather than subpoenaing such records in connection with a hearing, deposition or trial?*

To answer the first question, we perceive three separate issues that must be addressed: (1) whether W. Va.Code §§ 57–5–4a—4j provide the *exclusive* procedural method by which a party to a law suit may obtain the *medical* records of an opposing party; (2) whether W. Va.Code §§ 57–5–4a—4j apply when a party issues a subpoena for the sole purpose of inspecting and copying records; and (3) whether a lawyer's failure to comply with W. Va.Code §§ 57–5–4a—4j gives rise to a cause of action for tortious interference with a physician/patient relationship under *Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 446 S.E.2d 648 (1994).

1. **W. Va.Code §§ 57–5–4a—4j as the *exclusive* procedural method for obtaining *medical* records.** In deciding to permit Ms. Keplinger to amend her complaint to include a charge of tortious interference with a physician/patient relationship, the circuit court concluded that W. Va.Code §§ 57–5–4a—4j provide "the exclusive procedures that must be followed in all instances to obtain the release of *medical* records." (Emphasis added). We disagree.

First, the sections of the Code at issue do not apply to *all* medical records. It is clearly stated in W. Va.Code § 57–5–4a(a) (1981) (Repl.Vol.1997) that W. Va.Code §§ 57–5–4a—4j apply only to certain specified records that are "prepared, kept, made or maintained in *hospitals* that pertain to *hospital confinements* or *hospital services* rendered to pa-

tients admitted to *hospitals* or receiving *emergency room or outpatient care.*"[8] (Emphasis added).

It is well established that

"'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syllabus point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997).

Syl. pt. 4, *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999). *See also, Mitchell v. Broadnax*, 208 W.Va. 36, 46, 537 S.E.2d 882, 892 (2000) ("[W]hen we interpret a statutory provision, this Court is bound to apply, and not construe, the enactment's plain language."); Syl. pt. 3, *Michael v. Marion County Bd. of Educ.*, 198 W.Va. 523, 482 S.E.2d 140 (1996) (" 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)."). While W. Va.Code §§ 57–5–4a—4j apply only to certain medical records related to hospitals, medical records that may be relevant in connection with a legal action are created and maintained by a variety of health care professionals and in numerous circumstances that do not in any way involve a hospital. Because these types of records are not provided for in W. Va. Code §§ 57–5–4a—4j, those sections could not possibly provide the exclusive method of obtaining all medical records.

**2. Application of W. Va.Code §§ 57–5–4a—4j when subpoena issued for the sole purpose of inspecting and copying records.** VEP argues that it did not violate the provisions of W. Va.Code §§ 57–5–4a—4j, even with regard to subpoenas issued to obtain hospital records, because W. Va.Code §§ 57–5–4a—4j apply only when records are subpoenaed in connection with a hearing, deposition or trial. Because VEP sought only to inspect and copy the hospital records, they argue, W. Va.Code §§ 57–5–4a—4j did not apply to the subpoenas they issued. We disagree. Although these sections of the Code contain various references to documents being obtained in connection with a hearing, deposition or trial,[9] there are no express directives within them pertaining to the extent of their application in this regard. " ' "A statute that is ambiguous must be construed before it can be applied." Syllabus point 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).' Syllabus point 7, *State ex rel. ACF Industries, Inc. v. Vieweg*, [204] W.Va. [525], 514 S.E.2d 176 (1999)." Syl. pt. 3, *State ex rel. McGraw v. Combs Servs.*, 206 W.Va. 512, 526 S.E.2d 34 (1999). However, we must focus on the fact that

---

8. W. Va.Code § 57–5–4a(a) (1981) (Repl.Vol. 1997) states in full:

· As used in sections four-a to four-j [§§ 57–5–4a to 57–5–4j] in this article the following terms shall have the respective meanings ascribed thereto:

(a) "Records" means and includes without restriction, those, medical histories, records, reports, summaries, diagnoses, and prognoses, records of treatment and medication ordered and given, notes, entries, X-rays, and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered to patients admitted to hospitals or receiving emergency room or outpatient care. Such records shall not, however, include ordinary business records pertaining to patients' accounts or the administration of the institution.

9. *See, e.g.*, W. Va.Code 57–5–4b (1981) (Repl.Vol. 1997) ("[W]hen a subpoena duces tecum is served ... *in an action or proceeding* ... it shall be sufficient compliance therewith if the custodian or other officer of the hospital shall, ... file with *the court clerk or the officer, body or tribunal conducting the hearing*, a true and correct copy ... of all records described in such subpoena." (emphasis added)); W. Va.Code 57–5–4c (1981) (Repl.Vol.1997) ("[The sealed records shall be] directed as follows: If the subpoena directs *attendance in court*, to the clerk of such court or to the judge thereof; if the subpoena directs *attendance at a deposition*, to the officer before whom the deposition is to be taken, ... *in other cases, to the officer, body or tribunal conducting the hearing....*" (emphasis added)); W. Va.Code 57–5–4d (1991) (Repl.Vol.1997) ("[T]he copy of the records shall remain sealed and shall be opened only *at the time of trial, deposition, or other hearing,* upon the direction of *the judge, court, officer, body or tribunal conducting the proceeding....*" (emphasis added)).

" '[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 6, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999). In this regard, we have explained that

> In gleaning legislative intent, we endeavor to construe the scrutinized provision consistently with the purpose of the general body of law of which it forms a part.
>
> " 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus point 3, *Boley v. Miller*, 187 W.Va. 242, 418 S.E.2d 352 (1992).

*State ex rel. McGraw v. Combs Servs.*, 206 W. Va. at 518, 526 S.E.2d at 40 (citing Syl. pt. 3, *Rollyson v. Jordan*, 205 W.Va. 368, 518 S.E.2d 372 (1999)).

With regard to the instant statutes, we have previously explained, in *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 35, 454 S.E.2d 77, 80 (1994), that "the objective of these provisions is the establishment of guidelines for hospitals regarding the proper method for furnishing subpoenaed hospital records." Actually, the aforementioned Code sections go a little farther than simply establishing guidelines for hospitals regarding the proper method for furnishing subpoenaed hospital records. They also, *inter alia*, set forth the procedure to be followed in opening sealed records subpoenaed from a hospital. In this regard, the West Virginia Code states:

> Unless the sealed envelope or wrapper is returned to a witness who is to appear personally, the copy of the records shall remain sealed and shall be opened only at the time of trial, deposition, or other hearing, upon the direction of the judge, court, officer, body or tribunal conducting the proceeding, in the presence of all parties who have appeared in person or by counsel at such trial, deposition or hearing. *Before directing that such inner-envelope or wrapper be opened, the judge, court, officer, body or tribunal shall first ascertain that either: (1) The records have been subpoenaed at the insistence of the patient involved or his counsel of record; or (2) the patient involved or someone authorized in his behalf to do so for him has consented thereto and waived any privilege of confidence involved.* Records which are not introduced in evidence or required as part of the record shall be returned to the person or entity from whom received.

W. Va.Code § 57–5–4d (1991) (Repl.Vol.1997) (emphasis added). Additional provisions under Article 5 of Chapter 57 specify the admissibility of *copies* of hospital records in lieu of the original records, W. Va.Code § 57–5–4f (1981) (Repl.Vol.1997); provide for the substitution of copies after original hospital records have been admitted into evidence, W. Va.Code § 57–5–4i (1981) (Repl.Vol.1997); and define the proof required to establish prima facie evidence that certain medical, hospital and doctor bills were necessary and reasonable, W. Va.Code § 57–5–4j (1981) (Repl.Vol.1997).

When considering these statutes together, it becomes apparent that the Legislature developed a scheme to meet several interests relating to hospital records. First, the statutes meet the interests of hospitals by allowing them to maintain their original files in many instances (by submitting certified copies), and to alleviate any burden on the hospital's records custodian by permitting the authentication of the records by virtue of a procedure that does not require the personal appearance of the custodian. W. Va.Code §§ 57–5–4b, 4c & 4e. In addition, this statutory scheme acknowledges the special, personal and confidential nature of hospital records by requiring that the sealed records be opened only upon a determination that the patient involved, or his or her counsel of record, has consented to their opening. W. Va.Code § 57–5–4d.

We perceive of no logical reason why this scheme should apply to records being subpoenaed for the purpose of a hearing, deposition or trial, but should not apply when the records are requested merely for inspection

and copying. Even at the inspection and copying stage, it is important for attorneys to know that the records are true and accurate, in other words "authentic." Moreover, the Legislature's recognition of the confidentiality of such records could be severely undermined if all the protections afforded such documents could be evaded simply by obtaining the records for inspection and copying in advance of scheduling a deposition.[10]

■ For the foregoing reasons, we hold that any time a subpoena duces tecum is issued to require the production of hospital records as defined in W. Va.Code § 57-5-4a(a) (1981) (Repl.Vol.1997), whether such records are sought in connection with a hearing, deposition, trial or other proceeding, or are merely sought for inspection and copying, the requirements of W. Va.Code §§ 57-5-4a—4j apply and must be followed.

Finally, we note that a lawyer, as an officer of the court, may issue subpoenas. *See* W. Va. R. Civ. P. 45(a)(3) ("An attorney as officer of the court may also issue and sign a subpoena."). Therefore, as an officer of the court, a lawyer issuing a subpoena duces tecum for the production of hospital records is among those authorized, in W. Va.Code § 57-5-4d, to unseal the subpoenaed records. Thus, a lawyer, when acting in this capacity, my unseal subpoenaed hospital records without direction from a trial judge, so long as there is full compliance with all the requirements of W. Va.Code § 57-5-4d. Those requirements include (1) that all parties to the action be present in person or by counsel, (2) that the attorney seeking to open the records first ascertains that (a) the records have been subpoenaed at the insistence of the patient

involved or his counsel of record; or (b) that the patient involved or someone authorized in his or her behalf to do so has consented to their disclosure and has waived any privilege or confidence involved; and (3) records that are not introduced in evidence or required as part of the record shall be returned to the person or entity from whom received.[11]

■ **3. Lawyer's failure to comply with W. Va.Code §§ 57-5-4a—4j as grounds for cause of action for tortious interference with a physician/patient relationship under *Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 446 S.E.2d 648 (1994).** To fully answer the first reformulated certified question, we must determine whether a lawyer's failure to comply with W. Va.Code §§ 57-5-4a—4j gives rise to the specific cause of action for tortious interference with a physician/patient relationship that we recognized in *Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 446 S.E.2d 648. In syllabus point 5 of *Morris*, we held that

A patient does have a cause of action against a third party who induces a physician to breach his fiduciary relationship if the following elements are met: (1) the third party knew or reasonably should have known of the existence of the physician-patient relationship; (2) the third party intended to induce the physician to wrongfully disclose information about the patient or the third party should have reasonably anticipated that his actions would induce the physician to wrongfully disclose such information; (3) the third party did not reasonably believe that the physician could disclose that information to the third

---

**10.** In reality, even when a subpoena is issued pursuant to W. Va. R. Civ. P. 34 and 45 for the inspection and copying of documents, the custodian of the requested documents is often required to attend a brief deposition when turning over such documents.

**11.** We recognize that in *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 35, 454 S.E.2d 77, 80, we stated that "nothing in section 57-5-4d should be interpreted to limit the State's subpoena power over medical records, nor should that section be considered tantamount to a physician/patient privilege." Similarly, W. Va.Code § 57-5-4d expressly states that "nothing in this section, or the preceding section [§ 57-5-4c], shall limit in any

manner the availability of and access to documents as provided in the rules of civil procedure or elsewhere in this code by the parties to any civil action and their counsel." Our interpretation of these statutes in no way limits the State's subpoena power or creates a physician/patient privilege. We have merely clarified how hospital records should be handled in connection with the subpoena process. If a patient refuses to consent to the opening of his or her hospital records that are relevant and necessary to an action at bar, there is nothing to prohibit a circuit court from compelling the patient to consent to the release of the necessary medical records.

party without violating the duty of confidentiality that the physician owed the patient; and (4) the physician wrongfully divulges confidential information to the third party.

However, the *Morris* Court expressly limited its holding to "unauthorized, *ex parte* oral communications between an employer and the treating physician of a workers' compensation claimant regarding confidential physician/patient information." 191 W.Va. at 431, 446 S.E.2d at 653. Thus, by its own terms, *Morris* would apply to a lawyer's failure to comply with W. Va.Code §§ 57–5–4a—4j only if that failure occurred in connection with a workers' compensation case, and only where it involved an unauthorized *ex parte* oral communication. While, at some point, we may deem it appropriate to further extend our holding in *Morris*, we decline to do so in connection with the case at bar. Prior to our decision in the instant case, the law was not clear with regard to the application of W. Va.Code §§ 57–5–4a—4j to obtaining hospital records for inspection and copying only. Therefore, it could not have been reasonably foreseeable to VEP and its attorneys that their conduct in subpoenaing hospital records for inspection and copying without following the provisions of W. Va.Code §§ 57–5–4a—4j would give rise to a cause of action. Under these circumstances, VEP should not be subjected to a new cause of action.[12] For the foregoing reasons, we answer the first reformulated certified question in the negative.

### B. Rule 45 of the West Virginia Rules of Civil Procedure

The remaining reformulated certified questions relate to Rule 45 of the West Virginia Rules of Civil Procedure. We address each of these questions in turn.

**1. When using Rule 45 of the West Virginia Rules of Civil Procedure as authorized by W. Va. R. Civ. P. 34, is Rule 45 subject to the provisions of the civil procedure discovery rules?** Rule 45 is found in the section of the West Virginia Rules of Civil Procedure titled "Trials." Therefore, it is not technically a discovery rule. However, W. Va. R. Civ. P. 34(c), which is a discovery rule, permits the use of Rule 45 to compel a person who is not a party to the cause of action to "produce documents and things or to submit to an inspection." Thus, when Rule 45 is used as permitted in Rule 34, it is being used as a discovery device. For this reason, it has been recognized that Rule 45 is subject to the provisions of the discovery rules. *See In re Ramaekers*, 33 F.Supp.2d 312, 314 (S.D.N.Y.1999) ("Civil discovery rules apply to subpoenas issued under Rule 45."); *Marvin Lumber and Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 443 (D.Minn.1997) ("We conclude that Rule 45 Subpoenas, which are intended to secure the pretrial production of documents and things, are encompassed within the definition of 'discovery,' as enunciated in Rule 26(a)(5) and, therefore, are subject to the same time constraints that apply to all of the other methods of formal discovery."); *United States v. Santiago–Lugo*, 904 F.Supp. 43, 47 (D.P.R. 1995) ("Rule 45 is closely related to the discovery rules and is designed to work in synchronization with the civil discovery rules, whether it be depositions, Fed.R.Civ.P. 30, or requests for production of documents, Fed. R.Civ.P. 34, against parties and non-parties.").[13]

---

**12.** We note that W. Va.Code §§ 57–5–4a—4j are silent as to the proper remedy for their violation. However, also because the law was not clear with regard to the application of W. Va.Code §§ 57–5–4a—4j prior to this opinion, we conclude that no cause of action, if any be appropriate, should arise from VEP's herein described conduct that violated W. Va.Code §§ 57–5–4a—4j. Consequently, the question of what remedy is appropriate for a violation of W. Va.Code §§ 57–5–4a—4j is better left for another day. Notwithstanding our reluctance to establish the proper remedy for a violation of W. Va.Code §§ 57–5–4a—4j in the present case, we nevertheless observe that in the future there should be no lack of

clarity in the law and a party would violate the terms and duties of these statutes at their peril.

**13.** Because the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules. *See Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases ... in determining the meaning and scope of our rules."). *See, e.g., State v. Sutphin*, 195 W.Va. 551, 563, 466 S.E.2d 402, 414 (1995) ("The West Virginia

As a discovery device, a Rule 45 subpoena duces tecum may be used only to compel the production of documents and things, or the submission to inspections, that are within the scope of Rule 26.[14] *See* F.R. Civ. P. 45, Advisory Committee Notes—1991 Amend., 28 U.S.C. app.—R. Civ. P., at 763 (1994 ed.) ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."). *See also Jackson v. Brinker,* 147 F.R.D. 189, 193–94 (S.D.Ind.1993) ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules.... Consequently, if material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of subpoena.... Likewise, a person may raise the same objections to a subpoena as he could to discovery." (citations omitted)). *See generally* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil 2d* § 2452, at 21 (1995) ("Despite the elimination of specific references within the amended text of Rule 45, Rule 26 still governs the scope of discovery.... A nonparty witness is subject to the same scope of discovery as that person would be as a party to whom a request for documents is addressed pursuant to Rule 34." (footnote omitted)).

■ For the foregoing reasons, we expressly hold that when Rule 45 of the West Virginia Rules of Civil Procedure is used as a discovery device as permitted in W. Va. R. Civ. P. 34, Rule 45 is subject to all of the discovery provisions, including, but not limited to, the scope of discovery outlined in W.

Va. R. Civ. P. 26(b)(1), which permits discovery only of matters that are relevant to the subject matter involved in the pending action, not privileged, and are, or are likely to lead to the discovery of, admissible evidence. Consequently, we answer the second reformulated certified question in the positive.

In the instant case VEP sought discovery of Ms. Keplinger's entire medical history. The circuit court ultimately found that VEP's request exceeded the proper scope for discovery. Consequently, the court limited VEP's discovery of Ms. Keplinger's medical records to those that were created within a certain time period. Unfortunately, however, by the time the court made its ruling, VEP had already received medical records that exceeded the scope outlined by the court. We think this regrettable disclosure resulted, in part, from inadequate notice to Ms. Keplinger.

2. **When utilizing Rule 45 to subpoena a party's medical records from a nonparty, does the party receive adequate notice of a subpoena duces tecum when such notice is served on the party the same day the subpoena duces tecum is served on the nonparty record holder?** Under W. Va. R. Civ. P. 45(b)(1), "*[p]rior* notice of any commanded production of documents and things or inspection of premises before trial *shall* be served on *each party* in the manner prescribed by Rule 5(b)." (Emphasis added). The word "shall" is mandatory. *See State v. Allen,* 208 W.Va. 109, 118, 539 S.E.2d 87, 96 (1999) ("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (citations omitted)); Syl. pt. 1,

---

Rules of Evidence are patterned upon the Federal Rules of Evidence, ... and we have repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." (citations omitted)).

**14.** Specifically, W. Va. R. Civ. P. 26(b)(1) states, in relevant part:

(b) *Discovery scope and limits.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In general.—Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997) (" 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' " (citation omitted)). Thus, notice of a nonparty subpoena duces tecum issued pursuant to Rules 34 and 45 must be served on each party to the proceeding.

According to the committee notes regarding this provision of Rule 45,

> The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

F.R. Civ. P. 45, Advisory Committee Notes—1991 Amend., 28 U.S.C. app.—R. Civ. P., at 763. *See also United States v. Santiago–Lugo*, 904 F.Supp. 43, 47 ("This precautionary measure has been inserted in the rule to prevent ex-parte abusive and illegal use of the subpoena power. The purpose of this notice is to afford other parties, including the government in the civil forfeiture action, the opportunity to object to the production or inspection." (citations omitted)). *Accord Callanan v. Riggers & Erectors, Inc.*, 149 F.R.D. 519, 520 (D.Vi.1992).

One court has similarly explained:

> The purpose of the requirement of prior notice to the parties "is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." Fed.R.Civ.P. 45, Notes of Advisory Committee on Rules. "[C]ompliance with the notice provision is not a mere formality but serves the important function of streamlining discovery in order to alleviate duplication or delays." *Callanan v.*

*Riggers & Erectors, Inc.*, 149 F.R.D. 519, 520 (D.Vi.1992).

When a party fails to receive prior notice of the information sought from a nonparty, a party is deprived of its greatest safeguard under the Rule, that is, the ability to object to the release of the information prior to disclosure. *Spencer v. Steinman*, 179 F.R.D. 484, 489 (E.D.Pa.1998); *see also Mann v. University of Cincinnati*, 824 F.Supp. 1190, 1202 (S.D.Ohio 1993), *aff'd by unpublished opinion*, 114 F.3d 1188, 1997 WL 280188 (6th Cir.1997) (Rules 26 and 45 require that reasonable notice be given in writing to the recipient and other parties so that they have an adequate opportunity to object). In addition, when an attorney misuses his or her power under Rule 45 to command a nonlitigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded. *Spencer*, 179 F.R.D. at 489.

*Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 379–80 (D.Md. 1999).

Although Rule 45 requires "prior" notice to all parties to the cause of action, there is little case law interpreting the word "prior" in connection with Rule 45. Acknowledging that it could find "no case which has determined whether prior notice under Rule 45(b)(1) must be notice prior to service on the nonparty or notice prior to the date for production," the United States District Court for the District of Kansas observed that "[t]he cases suggest, however, that 'prior notice' means prior to service." *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D.Kan.1998). The *Biocore* court went on to explain:

> Based upon the cases, the history, and the language of Rule 45(b)(1), we interpret it to require notice prior to service of a subpoena duces tecum. At oral argument, defense counsel argued that such an interpretation would encourage misconduct, as opposing counsel could interfere with service of the subpoena. To the extent that the subpoena is improper, opposing coun-

sel must be able to interfere with its enforcement. Moreover, to the extent that the subpoena is proper, opposing counsel has an ethical duty not to hide or destroy discoverable evidence or to interfere with its valid enforcement[.] The judicial system relies on attorneys to adhere to lawful and ethical standards of conduct and the Court trusts that they will not abuse their notice.

*Id.*

In the present case, VEP provided notice to Ms. Keplinger on the same day that some of its Rule 45 subpoenas were served upon the third-persons to whom they were directed, January 15, 1999. Assuming, without deciding, that such notice is sufficient with regard to most discoverable documents, we believe that medical records are a unique breed of document and require special handling.

We have previously recognized that "[a] fiduciary relationship exists between a physician and a patient." Syl. pt. 1, *State ex rel. Kitzmiller v. Henning*, 190 W.Va. 142, 437 S.E.2d 452 (1993). In *Kitzmiller*, we further explained that "[i]nformation is entrusted to the doctor in the expectation of confidentiality and the doctor has a fiduciary obligation in that regard." 190 W.Va. at 144, 437 S.E.2d at 454. While we acknowledge that a person who has filed a civil action that places a medical condition at issue has impliedly consented to the release of medical information, this implied consent involves *only* medical information *related to the condition placed at issue.* In this regard, we stated in *Kitzmiller* that "the absence of [a physician-patient] privilege contemplates the release of medical information *only* as it relates to the condition a plaintiff has placed at issue in a lawsuit; it does not efface the highly confidential nature of the physician-patient relationship that arises by express or implied contract." 190 W.Va. at 144, 437 S.E.2d at 454. *See also* W. Va. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any matter, not privi-

leged, *which is relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." (emphasis added)).

The reason for this principle is that a person's medical records may contain information that is totally unrelated to a civil action they have initiated. Often, such unrelated medical information is considered by the patient to be very private or, perhaps, embarrassing. When a potential plaintiff desires that medical information unrelated to a civil action remain private, he or she should be able to maintain the confidentiality of that information. A person should not be deterred from filing a civil suit that places a medical condition into issue for fear that unrelated private or embarrassing medical information may be disclosed.

Although there is no physician-patient privilege in West Virginia, our Legislature has nevertheless acknowledged the special confidential nature of certain medical records. In W. Va.Code §§ 57-5-4a—4j, discussed earlier in this opinion, the Legislature has provided several procedures to be followed to protect the confidentiality of subpoenaed hospital records.

 Because of the highly personal and confidential nature of medical records, they should be subject to special consideration to assure that, in the process of discovery, there will be no unnecessary disclosure of medical information that is outside the scope of the litigation.[15] To this end, we find that it is crucial that a patient/party, who believes a subpoena duces tecum issued by an opposing party to obtain medical records is unreasonably broad or otherwise violates the discovery rules, have an adequate and meaningful opportunity to object to the subpoena *before* any medical records are disclosed.[16] Consequently, we hold that when a party to a civil action seeks to utilize W. Va. R. Civ. P. 45 to subpoena an opposing party's medical records from a nonparty (as opposed to obtain-

---

**15.** We note, however, that a patient may choose to allow broader disclosure of his or her medical records, which disclosure may be accomplished through a duly authorized release specifying the medical records to be disclosed.

**16.** In the present case, VEP began receiving responses on January 19, 1999, only four days after the subpoenas were issued and notice was served on Ms. Keplinger's counsel.

ing them by virtue of a release tendered by the party/patient), notice to the party/patient must occur sufficiently in advance of service of the subpoena to provide a reasonable opportunity for the patient/party to object to the request.[17] Thus, the third reformulated certified question is answered in the negative.

**3. May a party utilize Rule 45 of the West Virginia Rules of Civil Procedure to subpoena records that are the subject of an ongoing discovery dispute that has not been resolved by the parties or decided by the trial court?** The rules of discovery, which we have held apply to Rule 45 when it is used to obtain discovery from third persons as permitted by Rule 34, provide important mechanisms for addressing discovery disputes.[18] In this regard, W. Va. R. Civ. P. 26(c) states:

> (c) *Protective orders.*—Upon motion by a party or by the person from whom discovery is sought, including a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) That the discovery not be had;
>
> (2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters;
>
> (5) That discovery be conducted with no one present except persons designated by the court;
>
> (6) That a deposition after being sealed be opened only by order of the court;
>
> (7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
>
> (8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be open as directed by the court.
>
> If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

In addition, where there is an objection to a party's request for "[p]roduction of documents and things" or a request to enter "upon land for inspection and other purposes," W. Va. R. Civ. P. 34, "[t]he party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested." W. Va. R. Civ. P. 34(b). Pursuant to Rule 37(a), "[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery...."

---

**17.** While a definition of the word "reasonable" is not technically required at this juncture, we deem it appropriate to comment that, at the present time, we see no reason *not* to apply W. Va. R. Civ. P. 6 to this time requirement.

**18.** For example, Rule 26(b)(1) provides that:

The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that:

(A) The discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(B) The party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(C) The discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation.

*The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).*

(Emphasis added).

Rule 37 goes on to set out guidelines pertaining to motions to compel. Thus, once a party objects to a request for discovery, the issue may be brought before the trial court in the form of a motion to compel.

In addition to being subject to the foregoing provisions of the discovery rules, Rule 45 contains its own directive that is related to discovery disputes. The Rule 45 requirement of notice to a party of a nonparty subpoena duces tecum, as discussed above, serves the purpose of allowing a party an opportunity to object to a discovery request. In this regard, one court has observed, "[w]hen a party fails to receive prior notice of the information sought from a non-party, a party is deprived of *its greatest safeguard under the Rule*, that is, *the ability to object* to the release of the information *prior* to disclosure." *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 380 (citations omitted) (emphasis added).

■ As indicated above, the discovery rules set forth a scheme for addressing discovery disputes. Part of this scheme, when Rule 45 is involved, is that the parties be afforded the opportunity to object to a discovery request *before* information is disclosed by the nonparty who is designated to receive a subpoena duces tecum. Thus, when a party timely objects to the discovery of particular information, all efforts at obtaining discovery of that information should cease until the discovery dispute is resolved.[19] If, after a discovery dispute arises with regard to particular information, a party may nevertheless pursue such information by using an alternate method of discovery, the discovery rules and the protections afforded by them are rendered meaningless. Furthermore, such a practice is fundamentally unfair and

violates all sense of civility and decency. For these reasons, we hold that a party may not use Rule 45 of the West Virginia Rules of Civil Procedure, or any other discovery device, to pursue discovery of items that are the subject of an ongoing discovery dispute that has not yet been resolved by the parties or decided by the trial court. For this reason, we answer the fourth reformulated certified question in the negative.

■ 4. **In any civil action, may a party create a cause of action for tortious interference with an opposing party's physician/patient relationship, under syllabus point 5 of *Morris v. Consolidation Coal Co.,* 191 W.Va. 426, 446 S.E.2d 648 (1994), based upon the party's conduct in attempting to obtain the medical records of an opposing party by subpoena pursuant to Rules 34 and 45 of the West Virginia Rules of Civil Procedure?** This final issue requires little discussion. As we explained previously in this opinion, the *Morris* Court expressly limited its holding to "unauthorized, *ex parte* oral communications between an employer and the treating physician of a workers' compensation claimant regarding confidential physician/patient information." *Morris*, 191 W.Va. at 431, 446 S.E.2d at 653. Thus, *Morris* has no application to discovery violations. Moreover, the West Virginia Rules of Civil Procedure expressly set forth guidelines for the circuit court to impose sanctions as a penalty for violating the discovery rules. Specifically, under W. Va. R. Civ. P. 26(g), all discovery requests, responses or objections must be signed to certify, *inter alia*, that they are consistent with the rules, that they are not intended for any improper purpose, and that they are not unreasonable or unduly burdensome or expensive.[20] Additionally, Rule 26(g) authorizes a circuit court to im-

19. Pursuant to the discovery rules, parties must make a good faith effort to resolve discovery disputes before requesting court action. *See* W. Va. R. Civ. P 26(c) (requiring, in connection with a motion for a protective order, "certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."); W. Va. R. Civ. P 37(a)(2) (directing that a motion to compel include "certification that the movant in good faith has conferred or attempted to confer with the person or party failing to make the discovery in an effort to

secure the information or action without court action.").

20. W. Va. R. Civ. P. 26(g) states in full:

(g) *Signing of discovery requests, responses, and objections.*—Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. An unrepresented party shall sign the request, response, or objection and state the party's address. The signature of the attorney or

pose sanctions for an improper certification, which, in effect, allows the circuit court to impose sanctions for violations of the discovery rules:

> If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, may impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Furthermore, Rules 11 and 37 of the West Virginia Rules of Civil Procedure "allow trial courts to sanction parties who do not meet minimum standards of conduct in a variety of circumstances." *Bartles v. Hinkle*, 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996) (citation omitted). Thus, it is the Rules of Civil Procedure themselves, and not *Morris*, which provide the appropriate remedy for discovery violations.[21] The fifth reformulated certified question is answered in the negative.

## V.

### CONCLUSION

Based upon the foregoing, we conclude: (1) the provisions of W. Va.Code §§ 57–5–4a—4j must be followed any time a subpoena duces tecum is issued to require production of hospital records; (2) when Rule 45 of the West Virginia Rules of Civil Procedure is used as a discovery device, it is subject to all the provisions of the discovery rules; (3) when a party seeks to use W. Va. R.C.P. 45 to subpoena an opposing party's medical records from a nonparty, notice to the party/patient must occur sufficiently in advance of service of the subpoena to provide a reasonable opportunity for the patient/party to object; and (4) a party may not use W. Va. R.C.P. 45, or any other discovery device, to pursue discovery of items that are the subject of an ongoing discovery dispute.

Certified questions answered.

---

party constitutes a certification that the attorney or party has read the request, response, or objection, and that to the best of the attorney's or party's knowledge, information, and belief formed after a reasonable inquiry it is:

(1) Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

(2) Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

(3) Not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response or objection and a party shall not be obligated to take any action with respect to it until it is signed.

If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, may impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

21. The parties indicate that Ms. Keplinger has filed three motions for sanctions against VEP; however, no issues involving the trial court's resolution of those motions is presently before us. Also, see *supra* note 12, where we reserve our opinion regarding a possible tort cause of action for violation of the requirements of W. Va.Code §§ 55–5–4a—4j following this opinion.